Linda **DEUPREE**, Appellee,

v.

Christopher C. **ILIFF**, Appellant,

Capital Cities—ABC, Inc.,
Amicus Curiae.

Linda **DEUPREE**, Appellant,

v.

Christopher C. **ILIFF**, Appellee,

Capital Cities—ABC, Inc.,
Amicus Curiae.

Nos. 86–2516, 86–2562.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 12, 1987.
Decided Oct. 26, 1988.

James M. Smart, Jr., Kansas City, Mo., for appellant.

Arthur A. Benson, II, Kansas City, Mo., for appellee.

Before FAGG and MAGILL, Circuit Judges, and BRIGHT, Senior Circuit Judge.

FAGG, Circuit Judge.

## I.

This case arises from a controversy about the sex education unit of a family relations course taught to seniors at an Independence, Missouri, public high school. Linda Deupree, the teacher of the course, sued Christopher C. Iliff for libel, slander, intentional infliction of emotional distress, and false light invasion of privacy. Deupree's suit is based on a statement Iliff made when he was a guest on a call-in radio program dealing with the controversy.

Before trial, the district court granted partial summary judgment against Deupree on her libel and slander claims, holding that Iliff's statement was the expression of an opinion protected by the first amendment. The remaining claims for emotional distress and false light invasion

**302**

of privacy were submitted to the jury, which found in favor of Deupree and awarded her actual and punitive damages on each claim. After trial, the district court entered judgment notwithstanding the verdict on Deupree's false light invasion of privacy claim. The court reasoned that under a then-recent Missouri Supreme Court decision, Missouri law did not recognize a cause of action for that tort in the circumstances of Deupree's case. Both parties appeal. We affirm in part, reverse in part, and remand for further proceedings.

## II.

In 1981, Deupree began teaching an elective family relations course that included an optional, two-week segment in which students received general information about human reproduction and family planning. In January 1984, a group of parents complained to the Independence School Board about several books Deupree kept in the classroom for her personal reference, but that were not part of the approved curriculum for the course. The parents group took issue with what it deemed to be the inappropriate content of the books and with the possible availability of the books to students in the course. After discussion between Deupree and her supervisor, the board remained supportive of Deupree's use of the books for her own reference in the course.

Between January and March 1984, the controversy surrounding Deupree's course escalated. Local and school newspapers reported parents were objecting to the use of materials in Deupree's course that the "parents [said were] morally offensive." Some of these articles identified Deupree by name as the teacher of the course. Radio and television stations covered the story, and the issue was hotly debated at school board meetings. On March 1, 1984, a local "Christian Family" radio station for the second time devoted an hour to a call-in program on the topic. Under the format of the program, which was called "Encounter," listeners were invited to call in and voice their opinions. One of the complaining parents who was a guest on the radio program was highly critical of sex education being taught in the public schools. Deupree and other school officials were also asked to be guests in the studio, but they declined to do so.

On the day of the radio broadcast, the host of the program contacted Iliff, an attorney then practicing in Kansas City, Missouri, to request an on-the-air interview during the program. The host informed Iliff that materials being used in a public school family relations course had been called "filthy" and "pornographic." Iliff, who did not know Deupree personally and who claimed to be unaware of the specific controversy brewing over her course, consented to be available by phone for the radio interview.

According to Deupree, "[m]uch of the broadcast * * * consisted of comments critical of sex education, the absence of religious and moral values in schools[,] and allegations of censorship by school officials." Deupree was identified on the air as the teacher of the family relations course being discussed. After Iliff was introduced as an attorney experienced in matters concerning family and education, he and the host talked generally about the propriety of sex education in schools. In response to the host's question whether Iliff saw any correlation between public high school graduates "hardly able to read and write and get a job" and the "intense need to inform them about homosexuality and perversion, and where they can get a confidential pregnancy test, and everything of that sort," the following exchange took place:

Mr. Iliff: Well, what's going on in that classroom in Independence is you have a teacher basically who is much more interested in the titillating sorts of information that the teacher actually derives probably a very secret sort of sexual gratification * * *

The Host [interrupting]: Not * * * you're not at all saying that it necessarily applies in this case at all?

Mr. Iliff: Well, not necessarily, but what they do, of course, is they skip over the

essentials, the basics, and the things that are really critical for making a success out of life with these students, and they go right to the thing that really interests the teacher most, and that is certain kinds of sexuality, and breaking down the traditional moral codes that have been taught to children at home, in order to set them free from the middle-class morality that the teacher, him or herself finds so offensive.

The Host: Now that seems to me to be one of the central issues here * * * what is the moral code that is held in most homes in the community.

Plaintiff's Ex. 1 (tape recording). Deupree heard these remarks while she and several other teachers listened to the radio program in the vice principal's office at the high school.

### III.

Initially, we must decide whether Iliff's comment that Deupree was "much more interested in the titillating sorts of information that [she] actually derives probably a very secret sort of sexual gratification" was the expression of an opinion or a statement of fact. We will then consider each of Deupree's claims in this case.

### A.

 In the context of the first amendment, whether a statement is one of fact or opinion is a question of law to be decided by the court. *Janklow v. Newsweek, Inc.*, 788 F.2d 1300, 1305 n. 7 (8th Cir.) (en banc), *cert. denied,* 479 U.S. 883, 107 S.Ct. 272, 93 L.Ed.2d 249 (1986). Drawing from an opinion of the District of Columbia Circuit Court of Appeals, this circuit has adopted a four-factor analysis to guide the fact/opinion determination. *See id.* at 1302–03; *Ollman v. Evans,* 750 F.2d 970, 979 (D.C.Cir. 1984) (en banc), *cert. denied,* 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985). These factors are: (1) the precision and specificity of the disputed statement; (2) the plausible verifiability of the statement; (3) the literary context in which the statement was made; and (4) the public context

in which the statement was made. *Janklow,* 788 F.2d at 1302–03.

 The district court, relying in part on these factors, concluded that even though Iliff's statement was "silly, hyperbolic[,] and vituperative," when it was "recognized * * * for what it was—merely the opinion of a radio interviewee who was expounding upon his opinions on sex education in the classrooms of public schools"—the statement was a constitutionally protected expression of opinion. *Deupree v. Iliff,* No. 85–0233–CV–W–8, slip op. at 2 (W.D.Mo. April 11, 1986) (Order Granting Partial Summary Judgment). We agree.

Iliff's statement identifying Deupree as a teacher who derives personal sexual gratification from teaching her family relations course arguably has the necessary precision and specificity to satisfy the first *Janklow* factor. Nevertheless, whether the statement was factual "depends upon [Iliff's remarks], taken as a whole, of which the statement is a part." *Ollman,* 750 F.2d at 982. From this perspective, the statement reflects Iliff's broader perception that emphasis on sexuality by educators in general is misplaced and threatens Iliff's notion of "traditional moral codes" and "middle-class morality." When Iliff's challenged statement is considered in this light, the statement loses much of the fact-specific quality it may appear to have when viewed in isolation. With regard to the second factor, Deupree's intrinsic, personal satisfaction in teaching the course is not verifiable. Thus, Iliff's comment on the matter is an inherently unverifiable assertion about "a very secret sort" of subjective fulfillment.

Considering the third and fourth factors, we note the presence in the challenged statement of some cautionary language ("basically" and "probably"), *see Ollman,* 750 F.2d at 982–83, as well as a disclaimer by Iliff that his statement was "not necessarily" applicable to Deupree. Because "the distinction between fact and opinion can * * * be made only in context," *id.* at 982, the setting in which the remarks were offered must also be considered. The statement was made during the sort of

call-in radio show that is generally designed to encourage listener participation and to foster the airing of divergent viewpoints. As Deupree acknowledges, the show served as a broad-based forum for opinions on the appropriateness of sex education in schools generally as well as a forum for the specific discussion of a controversial sex education course in a local public school.

Against this background, Iliff's statement as a whole appears to be what the district court described—a statement of his position on the appropriate academic priorities in public education. We believe reasonable listeners following the program, *see id.* at 983, would recognize the broadcast was geared to attract a wide range of diverse views, and they would "tend[ ] to 'discount that which follow[ed].'" *Id.* (quoted citation omitted). When all of the factors are considered "together, * * * [with] no solitary criterion * * * be[ing] dispositive," *Janklow,* 788 F.2d at 1302, we are convinced Iliff's disputed statement was an expression of opinion within the meaning of the first amendment.

### B.

■ Because Iliff's statement was an expression of opinion rather than an assertion of fact, Iliff is "[a]bsolutely protected under the [f]irst [a]mendment" against a defamation action based on that statement. *Janklow v. Newsweek, Inc.,* 788 F.2d 1300, 1302 (8th Cir.) (en banc), *cert. denied,* 479 U.S. 883, 107 S.Ct. 272, 93 L.Ed.2d 249 (1986). This conclusion follows from the principle that because an opinion cannot be false, *see Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 339, 94 S.Ct. 2997, 3006, 41 L.Ed. 2d 789 (1974), it cannot support a defamation action requiring a false statement of fact. Missouri law is in accord with this principle. *See Henry v. Halliburton,* 690 S.W.2d 775 (Mo.1985) (en banc). Thus, the district court properly granted partial summary judgment for Iliff on Deupree's defamation claims for libel and slander, and we affirm that decision.

■ We also conclude Iliff's statement cannot form the basis of an award of damages for intentional infliction of emotional distress. After submission of this appeal, the United States Supreme Court decided *Hustler Magazine, Inc. v. Falwell,* — U.S. ——, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988) (*Falwell*). In *Falwell,* the Court was faced with two competing interests—the value of providing a state tort remedy for damages resulting from the intentional infliction of emotional distress on the one hand, and the value of protecting speech under the first amendment on the other. The Court rejected the court of appeal's rationale that because the jury found the challenged speech "was intended to inflict emotional distress, was outrageous, and did in fact inflict serious emotional distress, it [was] of no constitutional import whether the statement was a fact or an opinion, or whether it was true or false." *Id.* at 880. Instead, the Court held that "in the area of public debate," *id.* at 881, first amendment principles must operate to limit "a State's authority to protect its citizens from the intentional infliction of emotional distress," *id.* at 879. The Court took the position that allowing recovery for an outrageous statement of opinion as opposed to one of fact would "run[ ] afoul of [the Court's] long-standing refusal to allow damages to be awarded because the speech in question may have an adverse emotional impact on the audience." *Id.* at 882.

We recognize *Falwell* involved a plaintiff who was a public figure. *See id.* at 882 & n. 5. Deupree argues vigorously that she, in contrast, remained a private individual throughout the controversy. Although Deupree "played a central, albeit involuntary, role," *Dameron v. Washington Magazine, Inc.,* 779 F.2d 736, 741 (D.C.Cir. 1985), *cert. denied,* 476 U.S. 1141, 106 S.Ct. 2247, 90 L.Ed.2d 693 (1986), in the public debate over her family relations course, we need not decide whether she falls within that class of individuals who "voluntarily inject[ ] [themselves] or [are] drawn into a particular controversy and thereby become[ ] * * * public figure[s] for a limited range of issues," *Gertz,* 418 U.S. at 351, 94 S.Ct. at 3012. We believe "expressions of opinion are protected whether the subject

of the comment is a private or public figure." *Ollman,* 750 F.2d at 975. Thus, we conclude that under *Falwell,* Iliff's statement is protected by the first amendment from Deupree's emotional distress claim.

The district court did not have the benefit of the *Falwell* opinion when Deupree's case was tried. Under the principles of that decision, however, we hold Iliff is entitled to judgment notwithstanding the verdict on Deupree's emotional distress claim, and we reverse the district court's contrary ruling.

■ Finally, after the jury returned a verdict for Deupree on her claim for false light invasion of privacy, the district court determined a Missouri Supreme Court case precluded that cause of action. *See Sullivan v. Pulitzer Broadcasting Co.,* 709 S.W.2d 475 (Mo.1986) (en banc). For this reason, the district court granted judgment notwithstanding the verdict in favor of Iliff on the false light invasion of privacy claim.

The district court's decision on this cause of action is one that essentially requires the interpretation and analysis of existing state law. In these circumstances, we give substantial deference to the district court's interpretation unless it is fundamentally deficient in analysis or otherwise lacking in reasoned authority. *Wolverton Farmers Elevator v. First Am. Bank,* 851 F.2d 223, 225 (8th Cir.1988) (per curiam); *Imperial Oil of N.D., Inc. v. Consolidated Crude Oil Co.,* 851 F.2d 206, 211 (8th Cir.1988). We have studied the district court's conclusion concerning Deupree's claim for false light invasion of privacy in light of the *Sullivan* decision, and we find no reversible error.

#### IV.

In conclusion, we affirm the district court's grant of partial summary judgment for Iliff on Deupree's defamation claims for libel and slander and the entry of judgment notwithstanding the verdict on Deupree's false light invasion of privacy claim. In light of the Supreme Court's decision in *Falwell,* however, we reverse the district court's refusal to grant judgment notwithstanding the verdict on Deupree's emotional distress claim. We vacate the judgment awarding Deupree damages for the intentional infliction of emotional distress and remand for entry of judgment in favor of Iliff on that claim.

The parties shall bear their own costs of this appeal.

BRIGHT, Senior Circuit Judge, concurring separately.

I concur in the majority opinion. I do so because I believe that the defendant's words come within the protection of the first amendment.

Absent first amendment protection, those words by Mr. Iliff, an attorney who should have known better, would be actionable under Missouri law. A school teacher, such as Ms. Deupree, who has not injected her views into a controversy over sex education in the public schools ought not to be "fair game" for those who oppose teaching the subject. Yet, that is what happened in this case.

Although the Supreme Court in *Hustler Magazine v. Falwell,* — U.S. —, 108 S.Ct. 876, 880–81, 99 L.Ed.2d 41 (1988), may have left open the possibility that a non-public figure's claim of outrageous conduct based on a statement of opinion may be actionable, the panel has concluded here that Iliff's statement of opinion has absolute protection against a defamation award or an award for intentional infliction of emotional harm, regardless that Ms. Deupree may be a private, as distinguished from a public, individual. Nevertheless, we recognize the real hurt that Mr. Iliff's ill-chosen remarks caused this school teacher.

Although I join in the opinion, I add this comment. The opinion implies no approval of the conduct of Mr. Iliff that is the subject of this case. Indeed, those words call for condemnation and not approbation for, according to the jury verdict, Iliff's actions have caused Ms. Deupree emotional hurt and distress. Yet, no recovery is permitted because speech of this sort enjoys absolute first amendment protection. Were it not

so, recovery here might well be sustained on appeal.