741 F.Supp. 764 (1990)
Peggy HARDGE-HARRIS, et al., Plaintiffs,
v.
Chet PLEBAN, et al., Defendants.
No. 89-1574C(6).
United States District Court, E.D. Missouri.
June 29, 1990.
*765 *766 *767 Doris Gregory Black, St. Louis, Mo., for plaintiffs.
Lawrence J. Fleming, Greenberg Pleban Fleming & Simons, St. Louis, Mo., for defendants.
John Shepherd, Mary C. Kickham, St. Louis, Mo., for Tarkio College.

MEMORANDUM
GUNN, District Judge.
This case is currently before the Court on defendants' petition for removal (which plaintiffs oppose) and on defendants' motion to dismiss or, in the alternative, for summary judgment. For the reasons set forth below, the Court finds that this case was properly removed and grants defendants' motion for summary judgment.
Plaintiffs Peggy Hardge-Harris, her husband, Bernard Harris, and her children, Andrea and Andrew Terrence Hardge, originally filed this action in state court alleging thirteen separate counts including: false imprisonment; civil conspiracy; defamation; slander per se; malicious prosecution; invasion of privacy-false light; intentional infliction of emotional distress upon Hardge-Harris; negligent infliction of emotional distress upon Bernard Harris; loss of consortium by Bernard Harris; negligent infliction of emotional distress upon Andrea Hardge; negligent infliction of emotional distress upon Andrew Terrence Hardge; loss of consortium by Andrea Hardge; and loss of consortium by Andrew Terrence Hardge.
The named defendants in this case are listed on plaintiffs' petition as follows: "Chet Pleban, individually and as agent for Tarkio College, Greenberg and Pleban, David Stinson; Vincent D. Vogler, Jr., individually and as agent for Tarkio College, and Vincent D. Vogler & Associates, David Stinson; Burton Greenberg, individually and as agent for Tarkio College, Greenberg and Pleban, David Stinson; Chet Pleban and Burton Greenberg, partners doing business as Greenberg and Pleban, a Missouri general partnership, individually and as agent for Tarkio College, David Stinson; Vincent D. Vogler, doing business as Vincent D. Vogler and Associates, a Missouri general partnership, individually and as agent for Tarkio College, David Stinson; Tarkio College, a not for profit corporation; and David Stinson, individually and as agent for Tarkio College." In Count I of her petition, plaintiff further identifies defendants Pleban, Burton and Vogler as attorneys licensed in Missouri, with their principal places of business in Missouri, doing business as individuals and as members of their law partnerships, and acting, at all times relevant to this matter, as representatives of Tarkio College. Plaintiff alleges that Tarkio College is a not for profit corporation incorporated and existing under the laws of the state of Missouri and having its principal place of business in Missouri. Plaintiff alleges that David Stinson is a resident and citizen of the state of *768 Missouri and acted, at all times relevant to this matter, as representative of Tarkio College. Hardge-Harris alleges that she is an attorney licensed to practice law in Missouri and that she and her family reside in Missouri.
As the basis for her claim of false imprisonment (Count I) Hardge-Harris alleges that "the defendants," "between the dates of July 14th and July 19th, 1988" caused plaintiff to be arrested and held for questioning by United States Postal Inspectors. Plaintiff further alleges that she was not guilty of the crime with which she was charged and that there was no reasonable ground for her arrest and detention. She alleges that her arrest and detention caused her great emotional distress and injured her career by damaging her reputation and good name. Finally, she alleges that defendants' actions were "willful, wanton, reckless and malicious nature [sic]."
As the basis for her claim of civil conspiracy (Count II), Hardge-Harris alleges that "the defendants," knowing that an arrest was to take place at a certain meeting, entered into an agreement to "request and mandate" Hardge-Harris' attendance at the meeting. Hardge-Harris again alleges emotional distress and damage to her reputation and career and again alleges that defendants' actions were willful and malicious.
As the basis for her claim of defamation (Count III), Hardge-Harris alleges that "the defendants, between July 14 and July 19, 1988, communicated to U.S. Postal Inspectors that plaintiff was conspiring to extort, extorting and/or attempting to extort, and obstructing justice." She further alleges that defendants made these communications maliciously and in reckless disregard for the truth and that defendants' actions were willful and wanton. She again alleges emotional distress and loss of reputation and good name.
As the basis for her claim of slander per se (Count IV), Hardge-Harris essentially realleges the facts set forth in Count III, with the additional allegation that "those hearing said false, defamatory and slanderous words understood them as meaning and intended to mean and being understood to mean that plaintiff was committing a crime under the laws of the United States and constitute slander per se."
As the basis for her claim of malicious prosecution (Count V), Hardge-Harris alleges that "defendants" informed agents of the United States Postal Service that they suspected Hardge-Harris of conspiring to extort, attempted extortion and obstruction of justice. Hardge-Harris further alleges that defendants caused her to attend a meeting and thus to appear to be part of a conspiracy to extort, attempt to extort and obstruct justice. Further, Hardge-Harris alleges that defendants caused "others" to appear before a federal grand jury and caused that grand jury, in turn, to hand down an indictment of Hardge-Harris. Hardge-Harris alleges that defendants "took and incited and aided and caused others to arrest and take plaintiff into custody and hold her by force and duress and against her will...." Hardge-Harris further alleges that defendants "encouraged, incited, and caused a criminal charge and proceeding to be filed on August 3, 1988, in the United States District Court, Eastern District, wherein they unlawfully, maliciously, without legal right or authority, and with intent to injure plaintiff in her name and reputation, charged plaintiff with the felonies of conspiracy to extort and attempted extortion." Finally, Hardge-Harris alleges that she was acquitted of those charges on December 5, 1988. As a result of the above, Hardge-Harris alleges that she suffered mental and physical injury and damage to her reputation and character.
As the basis for her claim of invasion of privacy-false light (Count VI), Hardge-Harris alleges that defendants "communicated publicly and caused others to communicate publicly" accusations of Hardge-Harris' commission of the felonies described above. Hardge-Harris alleges that defendants knew these accusations to be false and made them with reckless disregard for their falsity. Hardge-Harris alleges emotional and physical injury and, finally, alleges *769 that defendants' actions were willful, wanton and malicious.
As the basis for her claim of intentional infliction of emotional distress (Count VII), Hardge-Harris alleges that defendants notified United States Postal Inspectors of Hardge-Harris' involvement in the purported conspiracy to extort and requested Hardge-Harris' attendance at a meeting at which, defendants knew, United States Postal Inspectors would effectuate the arrest of the suspected conspirators. Hardge-Harris realleges the same injuries and alleges that defendants' actions were willful, wanton and malicious.
As the basis for his claim for negligent infliction of emotional distress (Count VIII), Bernard Harris alleges that, because of all of the alleged injuries to his wife, he suffered emotional distress, embarrassment, public ridicule, scorn and trauma. Harris further alleges that defendants reasonably could have foreseen that he would be so injured. Finally, he alleges that defendants' actions were willful, wanton and malicious.
As the basis for his claim of loss of consortium (Count IX), Bernard Harris alleges that "solely by reason of and as the sole and proximate result of the willful acts of the defendants, plaintiff has lost the consort, society, companionship, affection and support of his wife" and, therefore, was damaged. Harris alleges that defendants' actions were willful, wanton, and malicious.
As the basis for her claim of negligent infliction of emotional distress (Count X), Andrea Hardge alleges that, because of the defendants' alleged tortious acts, she was injured by "being forced to witness the suffering of her mother" and that defendants reasonably could have foreseen that she would be so injured. Hardge further alleges that defendants' actions were willful, wanton and malicious.
For his claim of negligent infliction of emotional distress (Count XI), Andrew Hardge essentially restates his sister's claim in Count X.
For their claims of loss of consortium (Counts XII and XIII), Andrea and Andrew Hardge allege that, as a result of defendants' actions, they were "denied the care, protection, consideration, companionship, aid and society" of their mother. They both allege that defendants' actions were willful, wanton and malicious.
All four plaintiffs seek both actual and punitive damages.
The defendants assert 28 U.S.C. § 1442[1] as their basis for removal. In support of their petition, defendants allege that, at all times relevant to this matter, they were acting at the request and under the direction of agents of the United States Postal Inspection Service and the United States Attorney's office. In addition, defendants allege that both Pleban and Vogler were acting as attorneys and officers of the federal court. Moreover, defendants allege that, based upon the supervision and direction *770 of their actions by federal authorities, they are entitled to the defense of official immunity.
In their motion to dismiss, or in the alternative for summary judgment, defendants argue that the activities plaintiffs complain of are subject to several immunities and privileges, including official governmental immunity, prosecutorial immunity, witness immunity and attorney immunity. Additionally, defendants argue that plaintiffs' allegations fail to state a claim because they do not specify how any of the defendants were responsible for the decisions to arrest, indict and try Peggy Hardge, nor specifically what defamatory or slanderous statements were made by defendants or to whom. Further, defendants allege that plaintiffs fail to state a claim of malicious prosecution because the federal grand jury's indictment of Hardge-Harris precludes an allegation that she was prosecuted without probable cause.
Under Rule 56 of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if he can "show that there is no genuine issue as to any material fact and that [he] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). See also Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). In passing on a motion for summary judgment, a court is required to view the facts and inferences that may be derived therefrom in the light most favorable to the non-moving party. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983); Vette Co. v. Aetna Casualty and Surety Co., 612 F.2d 1076, 1077 (8th Cir.1980). The burden of proof is on the moving party and a court should not grant a summary judgment motion unless it is convinced that there is no evidence to sustain a recovery under any circumstances. Foster v. Johns-Manville Sales Corp., 787 F.2d 390, 392 (8th Cir.1986). However, under Rule 56(e), a party opposing a motion for summary judgment may not rest upon the allegations of his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). See also 10A Wright, Miller and Kane, Federal Practice and Procedure: Civil 2d, sec. 2739 (1983).
Finally, as the Eighth Circuit has recently reiterated, "Rule 56 ... `mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" White v. McDonnell Douglas Corporation, 904 F.2d 456, 458 (8th Cir.1990), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Defendants need not negate plaintiffs' claims; it is sufficient if they point out deficiencies in the record. It is then plaintiffs' burden to "set forth affirmative evidence, specific facts, showing that there is a genuine dispute on [those] issue[s]." Id.
With these standards in mind, the Court first sets forth a complete statement of the facts and then turns to a discussion of each of plaintiffs' claims.

A. STATEMENT OF FACTS
The individual defendants named herein all are attorneys for or otherwise representatives of Tarkio College, a small liberal arts college in St. Louis, Missouri. Specifically, defendant Stinson was Tarkio's vice-president and defendant Pleban represented Tarkio during a federal investigation of the college concerning government student loans.
In July 1988, while the federal investigation of Tarkio was ongoing, Stinson was approached by certain individuals with what he believed was a possible extortion attempt. The individuals indicated that, in exchange for certain consideration, they would destroy records in their possession which pertained to the federal investigation and were allegedly unfavorable to Tarkio. Peggy Hardge-Harris was the attorney for two of these individuals.
Stinson relayed this information to his employer's attorney, Pleban. Pleban, in turn, notified the United States Attorney's office in St. Louis of the events of which Stinson had told him. The matter was referred to the United States Postal Inspection *771 Service and other agencies for investigation. In the investigation, attorney Pleban made audio-recordings of telephone conversations he had with various of the defendants on July 11, 12, 14, 15, 18, 19, and 20. In the telephone conversations one or more of the defendants indicated that they had documentary evidence that Tarkio College was involved in unlawful activity and that, for consideration, they would not disclose the evidence to the government, but would turn it over to Tarkio's representatives. Pleban recorded these telephone conversations and turned them over to the government.
Similarly, on July 13, 14, and 20, 1988 various of the defendants met with Mr. Pleban in his St. Louis office. He recorded these conversations as well. Two meetings on July 20 in Mr. Pleban's office were video- and audio-recorded by postal inspectors and other federal agents.
On July 20, 1988, Hardge-Harris attended a meeting with her two clients. After the meeting, she telephoned Pleban and discussed the method of payment of a sum of money in return for her clients' release of potential claims they believed they had against Tarkio College. She denied having full knowledge of the nature of the transaction, as she did throughout her trial. Pleban suggested another meeting at his office the afternoon of July 20, 1988 at which time the money and the release of claims and documentary evidence of the alleged claims would be exchanged. Hardge-Harris and six other individuals, including her clients, attended the meeting. During this meeting, the suspected extortionists handed over documents to the Tarkio representatives and were given checks totalling $293,200.00. At the conclusion of this meeting, at approximately 3:15 p.m., after all the defendants had left Pleban's office and were in the elevator hallway, federal authorities confronted them and arrested them. Postal Inspector Michael Jones initially announced to all the defendants that they were under arrest. At that time defendant Hardge-Harris, unprompted by questioning, said to an agent, "I knew it," and to defendant David McCrary, "I told you so." In Hardge-Harris' handbag was a check from Tarkio College.
A grand jury returned indictments against Hardge-Harris and her six co-defendants formally charging them with the suspected extortion attempts. The case was tried to a jury which convicted all defendants except Hardge-Harris.[2]

B. REMOVAL
Removal under 28 U.S.C. § 1442 requires "a causal connection between what the [federal] officer has done under asserted official authority and the state prosecution." Maryland v. Soper (No. 1), 270 U.S. 9, 46 S.Ct. 185, 70 L.Ed. 449 (1926). Further, federal officer removal "must be predicated on the allegation of a colorable federal defense." Mesa v. California, 489 U.S. 121, ___, 109 S.Ct. 959, 964, 103 L.Ed.2d 99 (1989). The Supreme Court has noted that "one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court. The officer need not win his case before he can have it removed." Willingham v. Morgan, 395 U.S. 402, 407, 89 S.Ct. 1813, 1816, 23 L.Ed.2d 396 (1968). With this reasoning in mind, the Willingham Court approved an argument that "the test for removal should be broader, not narrower, than the test for official immunity." 395 U.S. at 405, 89 S.Ct. at 1815.
The Court finds that defendants have at least asserted a colorable federal immunity defense and accordingly removal under § 1442 is proper. However, because the Court grants defendants' summary judgment motion on other grounds, it does not rule on the validity of defendants' official immunity defense. See Mesa, 489 U.S. at ___, 109 S.Ct. at 964 (jurisdictional question of colorable defense and substantive *772 question of validity of defense are discreet inquiries).

C. FALSE IMPRISONMENT
The Missouri courts have held:
The essence of the cause of action of false arrest, or false imprisonment, "is the confinement, without legal justification, by the wrongdoer of the person wronged." Warrem v. Parrish, 436 S.W.2d 670, 672 (Mo.1969); Patrich v. Menorah Medical Center, 636 S.W.2d 134, 138 (Mo.App.1982). A person may also be liable for false arrest if he does not actually confine the plaintiff but merely instigates it, as in the case of providing information on the basis of which a subsequent unlawful arrest is made. See e.g., Smith v. Allied Supermarkets, Inc., 524 S.W.2d 848 (Mo. banc 1975); Snider v. Wimberly, 357 Mo. 491, 209 S.W.2d 239 (1948). However, justification is a complete defense to the cause of action, and this applies equally as well to the person who merely instigates an arrest as to one who actually effectuates it. In the former context it has been held that "[i]f one merely states the facts to an officer, leaving it to him or his superior to act or not as they see fit, he is not liable for a false arrest made by the officer." Greaves v. Kansas City Junior Orpheum Co., 229 Mo.App. 663, 80 S.W.2d 228, 237 (1935); accord, Vimont v. S.S. Kresge Co., 291 S.W. 159, 160 (Mo.App.1927).
Rustici v. Weidemeyer, 673 S.W.2d 762, 767 (Mo.1984) (en banc). See, also, Nooner v. Pillsbury Co., 840 F.2d 560 (8th Cir. 1988).
The Court finds that the allegations in plaintiffs' allegations belie the viability of Hardge-Harris' false imprisonment claim. At most, plaintiff alleges that defendants' falsely named her as a co-conspirator. This fact alone, however, did not ensure her subsequent arrest. Plaintiffs have not come forward with any evidence to support their contention that the information defendants gave to federal authorities was false. Finally, the Eighth Circuit has noted, in the context of a false imprisonment case against the arresting officers in a warrantless arrest, "a police officer `who arrests someone with probable cause is not liable for false arrest simply because the innocence of the suspect is later proved.'" Hannah v. City of Overland, 795 F.2d 1385, 1389 (8th Cir.1986). The test of whether there was probable cause to arrest requires consideration of "whether the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed ... an offense." Id. Even if the defendants in this case had actually effected plaintiff's arrest, therefore, if there was probable cause for plaintiff's arrest based on the objective reasonableness standard, "the subjective motivations of the arresting police officers are irrelevant" in a false imprisonment case. Hannah, at 1390.
The Court finds that plaintiffs have failed to show in what way defendants "arrested" plaintiff Hardge-Harris. Further, plaintiffs have not shown that defendants lacked probable cause to believe that Hardge-Harris was a co-conspirator in the extortion attempt. Accordingly, the Court enters judgment in favor of defendants on this count in its accompanying order.

D. CIVIL CONSPIRACY
In the second count of her complaint, plaintiff alleges that "defendants entered into an agreement with each other to request and mandate the presence of plaintiff at a meeting scheduled July 20, 1989...." Plaintiff further alleges that defendants "knew an arrest was to be made at said meeting" and that they "notified the arresting personnel that plaintiff was to be arrested...." The act that the defendants allegedly agreed to commit was, therefore, to request, or even "mandate," plaintiff to attend a meeting at which they knew she would be arrested.
These allegations do not state a claim for civil conspiracy. "In order to state a cause of action for civil conspiracy, a petition must allege that defendants conspired and agreed to commit an unlawful act and in the pursuit of the conspiracy, defendants *773 did some unlawful act which resulted in damages to plaintiff." McMullin v. Community Sav. Service Corp., 762 S.W.2d 462, 465 (Mo.App.1988). Moreover, "allegations of a conspiracy must be pleaded with sufficient specificity and factual support to suggest a `meeting of the minds.'" Deck v. Leftridge, 771 F.2d 1168, 1170 (8th Cir.1985).
The Court is not aware that requiring someone to attend a meeting is anywhere considered an unlawful act, particularly in the circumstances of this case. Having just determined that defendants did not effectuate plaintiff's arrest, the Court cannot say that defendants clearly "knew" that plaintiff would be arrested at the meeting or that they caused the arrest to occur. Therefore, even were the arrest itself an unlawful act, the defendants did not effectuate that arrest. All of the above notwithstanding, plaintiff has utterly failed to plead any type of factual support for defendants having "entered into an agreement" to commit an act, lawful or not.
Accordingly, the Court dismisses plaintiff's allegations of civil conspiracy for failure to state a claim.

E. DEFAMATION
In Count III of her complaint, plaintiff alleges that defendants "communicated to U.S. Postal Inspectors that plaintiff was conspiring to extort, extorting and/or attempting to extort, and obstructing justice." Plaintiff further contends that "defendants ... maliciously and in reckless disregard for the truth falsely accused the plaintiff of conspiring to extort, extorting and/or attempting to extort, and obstructing justice."
The Missouri courts have held that "a communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Henry v. Halliburton, 690 S.W.2d 775, 779 (Mo. 1985) (en banc). Certain types of communications, however, enjoy a qualified privilege. The determination of whether such a privilege applies is a question of law for the courts. Rucker v. Kmart Corp., 734 S.W.2d 533, 535 (Mo.App.1987). "A communication to law enforcement officers for the purpose of helping bring a criminal to justice is qualifiedly privileged." Id. The parties do not dispute that the allegedly defamatory statements uttered in this case were made to law enforcement officials and concerned allegations of criminal behavior. As a consequence, the Court finds that those statements are entitled to the qualified privilege described above.
Once the Court has determined that the defense of qualified privilege is available, "plaintiff bears the burden of establishing express malice to overcome the defense." Rucker, 734 S.W.2d at 535. The Missouri Supreme Court has elaborated upon this burden as follows:
[T]o overcome the qualified privilege the plaintiff ha[s] to prove malice-in-fact `that is, that the defendant was actuated by ill-will in what he did and said with a design to causelessly or wantonly injure the plaintiff.' In Minter [v. Bradstreet Co., 174 Mo. 444, 73 S.W. 668 (1903)], this Court stated that a plaintiff had to prove malice, which meant `that the report in question was prepared and published, not in good faith, but with an intent to injure plaintiffs, or with a willful and wanton neglect of the rights and interests of the plaintiffs.' Merely proving negligence does not satisfy the malice requirement because negligence does not constitute willfulness, reckless disregard of others' rights or actual presence of an improper motive to injure. [Citations omitted.]
McDowell v. Credit Bureaus of Southeast Mo., Inc., 747 S.W.2d 630, 632 (Mo.1988) (en banc).
The Court finds that plaintiffs herein have failed to offer any proof whatsoever of defendant's knowledge that their statements to federal authorities were false, or of their recklessness with regard to the veracity of the statements. In fact, plaintiffs have failed to indicate exactly what statements were made or by which defendants. Plaintiffs may not simply restate *774 allegations in their complaint that defendants knew these statements to be false and meet their burden under Rule 56(e). Accordingly, the Court finds that judgment should be entered for defendants on this count.

F. SLANDER PER SE
The Missouri courts have defined as defamatory per se "utterances which hold one up to hatred, contempt or ridicule, or cause the person to be shunned and avoided, or which `induce an evil opinion of one in the minds of right-thinking persons....'" Hester v. Barnett, 723 S.W.2d 544, 557 (Mo.App.1987). More specifically, "[a] slander is actionable per se if it falsely imputes to the plaintiff the commission of a criminal offense...." Smith v. UAW-CIO Federal Credit Union, 728 S.W.2d 679, 682 (Mo.App.1987). The defense of qualified privilege, discussed in Section E above, applies with equal force to an action for slander per se. Hester, 723 S.W.2d at 557. Therefore, for all of the reasons discussed in Section E, the Court finds that judgment should be entered in favor of defendants on plaintiffs' Count IV.

G. MALICIOUS PROSECUTION
The Missouri courts have set forth the requisite elements of the tort of malicious prosecution as follows:
(1) the commencement of a prosecution against the plaintiff; (2) the instigation by the defendant; (3) the termination of the proceeding in favor of the plaintiff; (4) the want of probable cause for the prosecution; (5) the defendant's conduct was actuated by malice; and (6) the plaintiff was damaged.
Sanders v. Daniel Intern. Corp., 682 S.W.2d 803, 807 (Mo.1984) (en banc). Actions for malicious prosecution are disfavored because of the policy of encouraging citizens to report crime and aid in prosecution. Schumer v. Craig Distributing Co., 745 S.W.2d 163, 165 (Mo.App.1987). Accordingly, the "courts require strict proof of each element of the tort." Id.
"Legal malice" is required to fulfill the fifth element of the tort. Sanders, 682 S.W.2d at 814. Missouri has adopted the test set forth in Restatement (Second) of Torts § 668 (1965) which provides: "To subject a person to liability for malicious prosecution, the proceedings must have been initiated primarily for a purpose other than that of bringing an offender to justice." Id. The court based its decision upon "the ever increasing problem of crime, and the need for effectively carrying out the public policy of urging citizens to aid in the prosecution of crime...." Id.
Further, the Missouri courts have held that "[t]o impose liability on a defendant for malicious prosecution, defendant must advise, encourage, pressure, or cause the institution of the prosecution." Schumer, 745 S.W.2d at 165. "Mere giving of honest assistance and information which leads to a prosecution does not necessarily render a person liable as an instigator of that prosecution...." Id.
Plaintiffs have not offered any specific factual evidence of defendants' wrongful motives in informing the federal authorities of Hardge-Harris' suspected criminal behavior. Similarly, plaintiffs have not offered any specific factual evidence of the manner in which defendants "advised, encouraged, pressured, or caused the institution of the prosecution" against Hardge-Harris. Essentially, plaintiffs only allege that defendants "maliciously ... caused plaintiff to be present at the meeting on July 20, 1988 and to appear as part of a conspiracy to extort...." Plaintiffs further allege that defendants "did maliciously and without probable cause incite and cause [sic] others to appear before the Federal Grand Jury ... and did maliciously and unlawfully, and without justification for same, cause an indictment to be made against plaintiff...." Plaintiffs do not indicate what "others" defendants allegedly caused to appear before the grand jury. Plaintiffs do not allege in what way defendants "caused" the indictment to be handed down by that grand jury. Finally, plaintiffs do not offer anything which would be probative in showing how defendants instigated the prosecution of Hardge-Harris. "[M]ere provision of information to the authorities *775 does not constitute instituting or continuing a criminal proceeding." Nasim v. Tandy Corp., 726 F.Supp. 1021, 1025 (D.Md.1989). See, also, Beard v. St. Mary's Health Center, 735 S.W.2d 27 (Mo. App.1987).
Finally, plaintiffs have failed to offer any evidence that the prosecution of Hardge-Harris went forward without probable cause. Under long-standing Missouri law, "if the charge is initiated by indictment by a grand jury or by a prosecuting attorney on his sworn information and belief, either amounts to a prima facie showing that probable cause did exist for the prosecution." Marcum v. Sagehorn, 660 S.W.2d 426, 429 (Mo.App.1983), citing Moad v. Pioneer Finance Co., 496 S.W.2d 794, 798-99 (Mo.1973). See also Ulmer v. Associated Dry Goods Corp., 823 F.2d 1278, 1282 (8th Cir.1987); Lipari v. Volume Shoe Corp., 664 S.W.2d 953, 956 (Mo. App.1983). In this instance, the charges against Hardge-Harris were initiated by a grand jury and, thus, Hardge-Harris must rebut the prima facie showing of probable cause created thereby. Indeed, "[t]he prima facie showing of the presence of probable cause is conclusive unless rebutted by evidence that `false testimony was the basis of the charge and that the falsity, if so, was discoverable upon reasonable investigation.'" (Emphasis added.) Marcum, 660 S.W.2d at 429.
Plaintiffs allege that defendants testified falsely before the grand jury. But the allegations of a party's pleadings, alone, are insufficient to overcome a summary judgment motion. Fed.R.Civ.P. 56(e). Further, plaintiffs do not allege that the purported falsity of defendants' testimony was discoverable by reasonable investigation.
Accordingly, the Court finds that plaintiffs have failed to establish, or plead, an adequate basis for a finding of legal malice, of defendants' instigation of prosecution, or of a lack of probable cause. Therefore, judgment must be entered in favor of defendants on Count V of plaintiffs' complaint.

H. INVASION OF PRIVACY  FALSE LIGHT
The Restatement (Second) of Torts § 652E (1977) defines the tort of false light privacy as follows:
Section 652E. Publicity Placing Person in False Light
One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
(a) the false light in which the other was placed would be highly offensive to a reasonable person, and
(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.
Henry v. Taft Television & Radio Co., 774 S.W.2d 889, 891 n. 1 (Mo.App.1989). The Comment following § 652D of the Restatement identifies the degree of "publicity" required to give rise to an action for invasion of privacy:
The form of invasion of the right of privacy covered in this Section depends upon publicity given to the private life of the individual. "Publicity," as it is used in this Section, differs from "publication," as that term is used in § 577 in connection with liability for defamation. "Publication," in that sense, is a word of art, which includes any communication by the defendant to a third person. "Publicity," on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. The difference is not one of the means of communication, which may be oral, written or by any other means. It is one of a communication that reaches, or is sure to reach, the public.
Thus it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons. On the other hand, any publication *776 in a newspaper or a magazine, even of small circulation, or in a handbill distributed to a large number of persons, or any broadcast over the radio, or statement made in an address to a large audience, is sufficient to give publicity within the meaning of the term as it is used in this Section. The distinction, in other words, is one between private and public communication.
Tureen v. Equifax, Inc., 571 F.2d 411 (8th Cir.1978), quoting Restatement (Second) Torts § 652D, comment a.
The Court finds that plaintiffs have not alleged sufficient publicity to meet this standard. They allege only that defendants communicated with the federal authorities investigating the college.
This potential deficiency notwithstanding, however, far more important issues mandate dismissal of this count. First, the Missouri Supreme Court has indicated a hesitation to recognize a tort for false light invasion of privacy separate from defamation. Sullivan v. Pulitzer Broadcasting Co., 709 S.W.2d 475, 481 (Mo.1986) (en banc). While the Sullivan court did not decline absolutely to recognize the false light tort, it did indicate that, on the facts before it, the plaintiff had merely stated a claim for defamation. See, also, Henry v. Taft Television & Radio Co., 774 S.W.2d at 892 (where the claim for recovery involves untrue statements, the appropriate remedy is by defamation). Sullivan involved the allegation that defendant had "published a false accusation concerning a statement of fact  in this case, a charge of criminal conduct or wrongdoing." Id. The Missouri court found those facts did not warrant permitting plaintiff to plead a separate tort basically duplicative of that of defamation. The Court finds that the Sullivan reasoning applies to this case. See, also, Deupree v. Iliff, 860 F.2d 300, 305 (8th Cir.1988) (affirming district court's grant of judgment notwithstanding the verdict in favor of defendant on false light invasion of privacy claim based on district court's conclusion that Sullivan precludes cause of action for false light privacy in Missouri).
Finally, in addition to all of the above, the tort of false light invasion of privacy will not lie when the matter purportedly publicized is of legitimate public interest. Hagler v. Democrat-News, Inc., 699 S.W.2d 96, 99 (Mo.App.1985). "It is for the court to say first whether the occasion or incident is one of proper public interest.... Where the operation of laws and activities of the police or other public bodies are involved, the matter is within the public interest." Id. The Court finds that the possible commission of a crime and the reporting of such a suspicion to the appropriate authorities are matters of legitimate public interest.
For all of the above reasons, the Court finds that plaintiffs' claim for invasion of privacy-false light must be dismissed.

I. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
The elements of the tort of intentional infliction of emotional distress are:
(1) defendant's conduct was extreme and outrageous, (2) defendant acted in an intentional or reckless manner, and (3) such conduct resulted in severe emotional distress. For the third element it is necessary to plead `the [emotional] distress is medically diagnosable and medically significant.'
Hendrix v. Wainwright industries, 755 S.W.2d 411, 412 (Mo.App.1988). In her claim for intentional infliction of emotional distress, Hardge-Harris alleges only that "plaintiff suffered severe emotional distress." As in Hendrix, she "failed to plead that the emotional distress was medically diagnosable or significant, thus, [plaintiff] failed to state a cause of action...." Id. Accordingly, the Court finds that this count of plaintiffs' petition should be dismissed.

J. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS  BERNARD HARRIS
Under Missouri law,
a plaintiff will be permitted to recover for emotional distress provided: (1) the defendant should have realized that his *777 conduct involved an unreasonable risk of causing the distress; and (2) the emotional distress or mental injury must be medically diagnosable and must be of sufficient severity so as to be medically significant.
Bass v. Nooney Co., 646 S.W.2d 765, 772-73 (Mo.1983) (en banc). In his claim for negligent infliction of emotional distress, Bernard Harris alleges that he "suffered emotional distress, embarrassment, public ridicule, scorn and trauma by being forced to witness the suffering of his wife." The type of harm necessary to establish a threshold tort in Missouri "excludes mere upset, dismay, humiliation, grief, and anger. If one person's careless conduct causes another to experience such emotions, this conduct has not harmed him in a way which justifies the imposition of liability." Id.
For the reasons set forth in this section, and in Section I above, the Court finds that Bernard Harris has failed to state a claim for negligent infliction of emotional distress and, therefore, that this claim should be dismissed.

K. LOSS OF CONSORTIUM  BERNARD HARRIS
The Court has found that judgment must be entered in favor of defendants on all of Peggy Hardge-Harris' claims. Accordingly, defendants are entitled to judgment as a matter of law on Bernard Harris' claim for loss of consortium. Teschner v. Physicians Radiology, 761 S.W.2d 665, 667 (Mo. App.1988).

L. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS  ANDREA HARDGE
For the reasons given in Section J above, the Court finds that judgment should be entered in favor of defendants on this claim.

M. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS  ANDREW HARDGE
For the reasons given in Section J above, the Court finds that judgment should be entered in favor of defendants on this claim.

N. LOSS OF CONSORTIUM  ANDREA HARDGE
Missouri does not recognize a parental loss of consortium claim brought by a child. Barbera v. Brod-Dugan Co., 770 S.W.2d 318, 320-21 (Mo.App.1989). Accordingly, the Court finds that judgment should be entered in favor of defendants on this claim.

O. LOSS OF CONSORTIUM  ANDREW HARDGE
For the reasons given in Section N above, the Court finds that judgment should be entered in favor of defendants on this claim.

P. CONCLUSION
For all of the foregoing reasons, and as set forth in its accompanying order, the Court finds that this case was properly removed to the federal court and that summary judgment in favor of defendants should be granted on plaintiffs' complaint.
NOTES
[1] The full text of 28 U.S.C. § 1442, Federal Officers Sued or Prosecuted, reads as follows:

(a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
(1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.
(2) A property holder whose title is derived from any such officer, where such action or prosecution affects the validity of any law of the United States.
(3) Any officer of the courts of the United States, for any act under color of office or in the performance of his duties;
(4) Any officer of either House of Congress, for any act in the discharge of his official duty under an order of such House.
(b) A personal action commenced in any State court by an alien against any citizen of a State who is, or at the time the alleged action accrued was, a civil officer of the United States and is a nonresident of such State, wherein jurisdiction is obtained by the State court by personal service of process, may be removed by the defendant to the district court of the United States for the district and division in which the defendant was served with process.
[2] For the factual findings herein, the Court relies upon the briefs of the parties as well as the transcript of the trial before this Court in United States of America v. Peggy Hardge, No. 88-00187CR(6).