551 A.2d 132

**Kellie Renee BROWN**

v.

**DART DRUG CORPORATION, Maryland.**

No. 335, Sept. Term, 1988.

Court of Special Appeals of Maryland.

Jan. 3, 1989.

---

488

Edward J. Connor (Howard M. Shemler, on the brief) Camp Springs, for appellant.

Samuel J. DeBlasis, II and O'Malley, Miles & Harrell, on the brief) Upper Marlboro, for appellee.

Argued before GARRITY, BLOOM and ROBERT M. BELL, JJ.

GARRITY, Judge.

Kellie Renee Brown appeals from the grant of a summary judgment motion by the Circuit Court for Prince George's County (Levin, J.), that effectively terminated her claims against Dart Drug Corporation of Maryland (Dart Drug). Appellant's claims, for malicious prosecution and negligence, were based on Dart Drug's failure to provide exculpatory information concerning Ms. Brown to the Prince George's County Police Department after it had asked the police to conduct an investigation of a theft and had furnished the police with information tending to indicate that Ms. Brown was the thief.

*Facts*

Ms. Brown had been employed by Dart Drug for approximately two months as a part-time cashier at the time of the alleged theft.

On the evening of October 23, 1983, after finishing her evening shift, Ms. Brown followed the routine procedure for balancing her register before leaving. On this particular night, Ms. Brown discovered a shortage of $6.20. After recounting the money several times with the manager, Joel Croteau, the shortage remained. The remaining money was then sealed in an envelope and deposited in the store safe by Croteau.

The following morning, the safe was opened by two Dart Drug employees, Norma Peloquin and Mary Overton. Upon opening the envelope, a cash shortage of $900, specifically 45 twenty-dollar bills, was discovered. The matter

was turned over to two investigators, Ali M. Muhammed and Donald Cooper, of Dart Drug's internal investigations unit. On the same day, the two investigators interviewed and obtained statements from Ms. Brown, Mr. Croteau, Ms. Peloquin and Ms. Overton, and then contacted the Prince George's County Police Department to report the theft. The case was assigned to Detective Joseph W. Frohlich, and Dart Drug's investigators turned over to him the statements they had previously taken from Ms. Brown and Mr. Croteau. Subsequently, Mr. Cooper obtained a statement from the head cashier, Clevetta Forrester, in which Ms. Forrester voiced her suspicions that Ms. Peloquin had both a motive and an opportunity to commit the theft.[1] She further averred that Ms. Peloquin had severe financial problems at the time, that she was behind in her rent, and that bill collectors were calling the store for her. Moreover, according to Ms. Forrester, Ms. Peloquin had previously acted in a suspicious manner while in her presence when removing cash tills from the safe, and that several days earlier a $47 shortage had been discovered in one of the cash tills which Ms. Peloquin had removed from the safe. Allegedly, after Mr. Cooper took this statement, he agreed with Ms. Forrester that Ms. Brown, who had been targeted by Dart Drug as the prime suspect, had probably not been responsible for the theft.

Although the Forrester statement taken by Mr. Cooper was never turned over to Detective Frohlich, Mr. Muhammed attested that he contacted the detective to relate that as a result of an investigation involving other incidents in the store, Ms. Peloquin should also be considered a suspect.

Detective Frohlich conducted an independent investigation and interviewed a number of Dart Drug employees.

---

1. Ms. Forrester advised Mr. Cooper that
   there was the possibility that Kellie's envelope very well could have been opened by Mrs. Peloquin while Mrs. Overton wasn't looking and then removed the money from Kellie's envelope and then put the envelope back with the other cashiers' envelopes.

He did not interview Ms. Forrester, however, because she was not made known to him. After concluding his investigation, Detective Frohlich brought charges against Ms. Brown for theft over $500 in value. The matter went to trial in the District Court for Prince George's County. Ms. Brown was acquitted of the charge.

Ms. Brown subsequently brought this action for malicious prosecution and negligence. In opposition to a motion for summary judgment, Ms. Brown included affidavits from Detective Frohlich and the prosecuting attorney in which each stated that if he had known of Ms. Forrester's statement Ms. Brown would not have been prosecuted.

## Discussion of Law

On appeal, the appellant posits that there was sufficient evidence to submit the counts of malicious prosecution and negligence to the jury. Specifically, the appellant alleges that, once Dart Drug investigators undertook to make an investigation of the incident and supply the police with information, they had an obligation to furnish the police with not only inculpatory information, but any exculpatory information as well.

Before an action for malicious prosecution may be brought, the complaining party must show:

(a) a criminal proceeding instituted or continued by the defendant against the plaintiff, (b) termination of the proceeding in favor of the accused, (c) absence of probable cause for the proceeding, and (d) "malice," or a primary purpose in instituting the proceeding other than that of bringing an offender to justice.

*Exxon Corp. v. Kelly,* 281 Md. 689, 693, 381 A.2d 1146 (1978), citing *Durante v. Braun,* 263 Md. 685, 688, 284 A.2d 241 (1971).

Dart Drug denies responsibility and avers that Detective Frohlich commenced the criminal action against Ms. Brown based on his independent investigation.

In *Wood v. Palmer Ford,* 47 Md.App. 692, 700–1, 425 A.2d 671 (1981), *aff'd. in part and rev'd. in part,* 298 Md. 484, 471 A.2d 297 (1984), Judge Orth cited Prosser, *Law of Torts* (4th ed. 1971) p. 836–7, for the proposition that:

The defendant may be liable either for initiating or for continuing a criminal prosecution without probable cause. But he cannot be held responsible unless he takes some active part in instigating or encouraging the prosecution. He is not liable merely because of his approval or silent acquiescence in the acts of another, nor for appearing as a witness against the accused, even though his testimony is perjured, since the necessities of a free trial demand that witnesses are not to be deterred by fear of tort suits, and shall be immune from liability. On the other hand, if he advises or assists another person to begin the proceedings, ratified it when it is begun in his behalf, or takes any active part in directing or aiding the conduct of the case, he will be responsible. The question of information laid before prosecuting authorities has arisen in many cases. If the defendant merely states what he believes, leaving the decision to prosecute entirely to the uncontrolled discretion of the officer, or if the officer makes an independent investigation, or prosecutes for an offense other than the one charged by the defendant, the latter is not regarded as having instigated the proceeding; but if it is found that his persuasion was the determining factor in inducing the officer's decision, or that he gave information which he knew to be false and so unduly influenced the authorities, he may be held liable. (footnotes omitted).

In the case at bar, Dart Drug directly aided the conduct of the police investigation by examining witnesses and taking statements. The manager, Stanley Klutz, filed a Crimes Against Property report the same day that the money was discovered missing and listed Kellie Brown as the number one suspect. Of the five statements that were taken by Dart Drug investigators, only two were furnished to Detective Frohlich. Most importantly, neither the excul-

patory statement executed by Ms. Forrester nor Ms. Forrester's identity was ever made known to the police.

█ It is settled law that a civil defendant may not avoid liability for malicious prosecution by relying on the independent judgment of a prosecutor or attorney unless that defendant has made a full disclosure of all material facts relative to the charges being made. *Gladding Chevrolet, Inc. v. Fowler*, 264 Md. 499, 287 A.2d 280 (1972); *Mertens v. Mueller*, 122 Md. 313, 89 A. 613 (1914).

It has been repeatedly held that the summary judgment procedure is not a substitute for trial but a hearing to determine whether a trial is necessary, when there is no genuine controversy. *Brewer v. Mele*, 267 Md. 437, 298 A.2d 156 (1972). The critical question for the trial court on the motion for summary judgment is whether there exists a genuine dispute as to a material fact and, if not, what the ruling of law should be upon those undisputed facts. In determining whether a factual dispute exists, all inferences which may be drawn from the pleadings, from affidavits, or from admissions must be resolved against the moving party. Indeed, if the facts are susceptible of more than one inference, the materiality of that arguable factual dispute must be judged by looking at the inferences in a light most favorable to the person against whom the motion is made and in a light least favorable to the movant. *Liscombe v. Potomac Edison Co.*, 303 Md. 619, 495 A.2d 838 (1985).

█ We believe it clear that once Dart Drug had failed, for whatever reason, to provide the police with the exculpatory evidence regarding Ms. Brown, the issue of whether Dart Drug was liable on the theory of either malicious prosecution or negligence became a question for the fact finder. Accordingly, we hold that the trial court erred in granting the motion for summary judgment on behalf of Dart Drug.

JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR FURTHER PROCEEDINGS IN ACCORDANCE

WITH THIS OPINION; COSTS TO BE PAID BY APPEL-
LEE.