Kevin M. RANSOM

v.

BALTIMORE COUNTY, et al.

No. CIV. L–99–415.

United States District Court, D. Maryland.

Aug. 11, 2000.

---

John A. Austin, Towson, MD, for plaintiff.

Virginia W. Barnhart, Jeffrey Grant Cook and John Edward Beverungen (Baltimore County Office of Law) Towson, MD, for defendants Baltimore County, Captain Steven Vaughn, and Detective Timothy Bonsall.

Natalie F. Zaidman and Holly Drumheller Butler (Piper, Marbury, Rudnick & Wolfe) of Baltimore, MD, for defendant Anna M. Ransom.

## MEMORANDUM

LEGG, District Judge.

Before the Court are the motions for summary judgment filed by (i) Defendants Baltimore County, Steven Vaughan, and Timothy Bonsall, (the "County Defendants") and (ii) Defendant Anna Ransom. The parties have comprehensively briefed the issues, and the Court dispenses with a hearing. *See* Local Rule 105.6 (D.Md. 1999). For the following reasons, the Court shall, by separate Order, grant the defendants' Motions for Summary Judgment and close the case.

## I. Background

This case concerns the arrest and involuntary commitment of the plaintiff, Officer Kevin Ransom. Mr. Ransom is a Baltimore County Police Officer. During 1996 and 1997, Mr. Ransom and his wife, Defendant Anna Ransom, experienced marital difficulties and began living apart.[1] In early October 1997, Mr. Ransom moved back in with Ms. Ransom. Ms. Ransom

intended to move out on October 1, but did not do so.

On October 2, 1997, Mr. Ransom returned home at approximately 2 a.m. An argument between him and Ms. Ransom ensued over Mr. Ransom's returning late from work. According to Ms. Ransom, Mr. Ransom stated that he was "tired" and "could not handle it anymore." He then pointed his service revolver at himself and at his wife. (*See* Anna Ransom Dep. at 83–84, 86.)

In the early hours of October 4, 1997, at approximately 1 a.m., Ms. Ransom went to Mr. Ransom's precinct (Garrison) to report further concerns over her husband's behavior. She reported that at 11 p.m. that evening (October 3), Mr. Ransom stated that "he could not take it anymore" and that he was planning to kill himself after his father's wedding on October 4. During this conversation, according to Ms. Ransom, Mr. Ransom had pointed his gun at his head and chest, and once put it in his mouth. (*See* Anna Ransom Dep. at 87–90.)

At the Garrison Precinct, Ms. Ransom was interviewed by the supervisor on duty, Lieutenant Landsman, by Captain Stephen Vaughan, by Detective Timothy Bonsall, and by Dr. James McGee, the director of Psychology and Forensic Services at Sheppard Pratt Hospital. The officers decided to arrest Mr. Ransom and hold him for psychiatric observation. Detective Bonsall applied for a Statement of Charges charging Mr. Ransom with assault. (Pl.Ex. A). Bonsall also completed a Petition for Emergency Evaluation requesting a psychological examination of Mr. Ransom (Pl. Ex. B). A commissioner issued an arrest warrant for Mr. Ransom.

Mr. Ransom was arrested at his home on the afternoon of October 4, 1997 and charged with assault. He was held for observation against his will at Sheppard Pratt Hospital until his discharge on October 10, 1997. Upon his discharge, his

---

1. There is evidence of an romantic relationship between Mr. Ransom and a fellow police officer, Sharon Creed, wife of defendant Carl Creed.

treating psychologist, Dr. Dickerson, found him "not fit for duty at this time." (Def. Anna Ransom Ex. 10.)

Before Mr. Ransom's criminal trial, the State's Attorney for Baltimore County reduced the charges against Mr. Ransom from felony assault to misdemeanor reckless endangerment. At trial, Ms. Ransom invoked her marital privilege and refused to testify against her husband. The State's Attorney dropped the charges. Mr. Ransom returned to duty on March 16, 1998. All of his back pay was restored.

In February 1999, Mr. Ransom filed this suit against Baltimore County, Detective Bonsall, Captain Vaughan, Ms. Ransom, and Mr. Creed.[2] The Complaint charges: (i) defamation; (ii) false arrest and imprisonment; (iii) malicious prosecution; (iv) deprivation of the plaintiff's due process rights in violation of 42 U.S.C. § 1983; (v) inadequate training by Baltimore County; (vi) violation of the plaintiff's rights under Article 24 of the Maryland Declaration of Rights; (vii) gross negligence; and (viii) conspiracy. The County defendants are named in all counts. Ms. Ransom is a defendant to only Counts I, III, and VIII. The Court bifurcated the case to stay proceedings against Baltimore County.[3] All defendants have now moved for summary judgment.

## II. Summary Judgment Standard

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Felty v. Graves–Humphreys Co.*, 818 F.2d 1126,

1128 (4th Cir.1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial). Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir.1987).

## III. Analysis

### A. Count IV: Due Process under 42 U.S.C. § 1983

■ Officer Ransom charges that Defendants Vaughan and Bonsall violated his constitutional rights. He seeks relief under 42 U.S.C. § 1983. The County defendants assert that they are protected from liability under the doctrine of qualified immunity. In assessing a claim for qualified immunity, the Court must: (i) identify the right allegedly violated; (ii) determine whether the constitutional right violated was clearly established at the time of the incident; and (iii) evaluate whether a reasonable officer would have understood that the conduct at issue violated the clearly established right. *See S.P. v. City of Takoma Park*, 134 F.3d 260, 265 (4th Cir. 1998). To defeat a qualified immunity defense, the plaintiff must demonstrate that the particular actions of the police officers were unlawful under the law established at the time of the incident. *Id.* at 266.

Officer Ransom alleges only that the defendants violated his "due process" rights. (*See* Pl. Mem. Opp. Sum J. at 17.) Based on the facts alleged, the confinement of Officer Ransom Sheppard Pratt and his arrest both constitute potential violations of Officer Ransom's rights. Nevertheless, the Court finds, for the reasons discussed below, that both the con-

---

2. Defendant Creed has not responded to the complaint, and the plaintiff moved for entry of default against him. The Court denied the motions without prejudice, pending ruling on the motions for summary judgment.

3. *See* Order of April 19, 1999.

finement and arrest are protected by qualified immunity.

### 1. Seizure and Confinement

■ In *S.P.*, the Fourth Circuit noted that the law concerning mental health seizures, at least prior to 1998, was not clear. No clearly established authority would have put officers on notice of what conduct could violate a defendant's rights. *See S.P.*, 134 F.3d at 267. This uncertainty is likely sufficient to provide Defendants Vaughan and Bonsall with qualified immunity.

■ Viewing the facts most favorably to the plaintiff, however, Mr. Ransom points out correctly that at the time of his confinement, the Fourth Circuit recognized a clearly established right in the "mental health seizure context" that a person has a "general right to be free from seizure unless probable cause exists." *Gooden v. Howard County*, 954 F.2d 960, 968 (4th Cir.1992). Probable cause is equivalent to "some demonstration of overtly dangerous behavior." *Id.* (citation omitted).

In this case, Officers Vaughan and Bonsall had heard from a witness (Ms. Ransom) that Officer Ransom was threatening suicide, and had during the three previous days pointed his service revolver both at himself and his wife. Further, Officer Ransom's work performance had declined over the previous six months. (*See* Vaughan Dep. at 47.)

Before confining Officer Ransom, Detective Bonsall, Captain Vaughan, and Dr. McGee all interviewed Ms. Ransom. Dr. McGee spoke with one or two friends of Mr. Ransom, as well as with Mr. Ransom's father via telephone. (*See* McGee Dep. at 15.) Based on the investigation, reasonable officers relying on *Gooden* would have concluded that involuntarily detaining Mr. Ransom was "not only reasonable, but prudent." *S.P.*, 134 F.3d at 267.

Officer Ransom argues that the police erred by failing to corroborate Ms. Ransom's story before initiating action against him. He charges that her statement to police was filled with inaccuracies. The record demonstrates, however, that Dr. McGee did in fact consult several other people before recommending that Mr. Ransom be held for observation. In addition, Mr. Ransom has not pointed out any serious inconsistencies in Ms. Ransom's statements. At her deposition, Ms. Ransom admitted she did not know if her husband's gun was loaded or not, although she believed it was. (*See* Anna Ransom Dep. at 84.) This admission is insignificant. The behavior Ms. Ransom described was undeniably threatening to herself and to her husband. It could certainly constitute the basis for a charge of assault as well as probable cause to confine Officer Ransom.

Ms. Ransom's alleged history of instability,[4] and her delay in reporting her husband's threatening behavior, is likewise irrelevant. At least three separate officials interviewed Ms. Ransom and found her credible. Her deposition testimony was likewise consistent with her interviews with the police.

■ Officer Ransom also charges that Defendants Vaughan and Bonsall did not observe him personally prior to completing the Petition for Emergency Evaluation, as required by Md.Code Ann. Health–Gen I. § 10–622(a) and police procedure. (*See* Bonsall Dep. at 52.) Officer Ransom points out that Captain Vaughan said he would have proceeded to arrest and hold Officer Ransom even had Dr. McGee advised against it. (Vaughan Dep. at 52–53.) Under ideal circumstances, the officers would likely have personally observed Officer Ransom prior to petitioning for his confinement. Qualified immunity, however, protects "all but the plainly incompe-

---

**4.** The plaintiff alleges that Ms. Ransom has a history of nervous breakdowns and emotional instability.

tent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), and protects officers from "bad guesses in gray areas." *Wilson v. Layne,* 141 F.3d 111, 114 (4th Cir.1998). Even if the Baltimore County police made a bad guess in this case, and the Court is not persuaded that they did, they are protected by qualified immunity.

*2. Arrest*

■ Mr. Ransom has a right to be free from arrest without probable cause. *See Smith v. Reddy,* 101 F.3d 351, 356 (4th Cir.1996). As discussed above, there was ample evidence to provide probable cause for the police's belief that Officer Ransom had committed a crime. As the Fourth Circuit noted in *Gooden,* "if policemen arrest a person on the basis of a private citizen's complaint that if true would justify the arrest, and they reasonably believe it is true, they cannot be held liable for a violation of the Constitution merely because it later turns out that the complaint was unfounded." 954 F.2d at 966.

Mr. Ransom argues that because Ms. Ransom told police that she would not testify against her husband, police lacked probable cause to arrest him. This contention is without merit, as Ms. Ransom's unwillingness to testify did not affect the officers' belief that a crime had been committed and that Officer Ransom posed a threat to himself and/or others.

■ Finally, Officer Ransom was arrested pursuant to a valid warrant. "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost." *Malley v. Briggs,* 475 U.S. 335, 344–45, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Defendants Vaughan and Bonsall are therefore entitled to qualified immunity concerning Officer Ransom's arrest. The Court will grant summary judgment for Defendants Vaughan and Bonsall on Count IV.

## B. Count VI: Violation of Article 24 of the Maryland Declaration of Rights

■ The standard for establishing a violation of Article 24 of the Maryland Declaration of Rights is whether the alleged behavior "shocks the judicial conscience." *Williams v. Prince George's Co.,* 112 Md. App. 526, 548, 685 A.2d 884 (1996). Contrary to Officer Ransom's assertions, this is not necessarily a question for a jury. *See id.* at 548–49, 685 A.2d 884 (granting summary judgment for defendants). The Court does not find the actions of Officers Vaughan and Bonsall to be shocking to the judicial conscience, but rather, as discussed above, likely prudent for reasonable officers. The Court will therefore grant summary judgment for the defendants on Count VI.

## C. Count VII: Gross Negligence

■ Under Maryland law, public officials such as Defendants Vaughan and Bonsall are immune from non-intentional tort claims. *See Ashton v. Brown,* 339 Md. 70, 117, 660 A.2d 447, 470 (1995); *Williams,* 112 Md.App. at 549, 685 A.2d 884. Mr. Ransom argues at length that the defendants acted intentionally in arresting and holding him. Absent malice, however, Defendants Vaughan and Bonsall are protected by immunity. *See Williams,* 112 Md.App. at 550, 685 A.2d 884. Mr. Ransom has not pleaded malice, and there is no evidence in the record to suggest that Defendants Vaughan or Bonsall acted with malice. Summary Judgment for the defendants is therefore appropriate on this claim.

## D. Count II: False Arrest and False Imprisonment

■ Captain Vaughan and Detective Bonsall arrested Mr. Ransom pursuant to a valid arrest warrant issued by a District Court Commissioner. "An arrest made under a warrant which appears on its face to be legal is legally justified in Maryland, even if, unbeknownst to the ar-

resting police officer, the warrant is in fact improper." *Ashton,* 339 Md. at 120, 660 A.2d 447. As discussed above, Officer Ransom has not produced any evidence showing that the investigation underlying the warrant was inadequate or improper. There is thus no basis for a claim of false arrest.

■ Under Maryland law, false imprisonment consists of "deprivation of the liberty of another without his consent and without legal justification." *Ashton,* 339 Md. at 119, 660 A.2d 447. Legal justification is equivalent to "legal authority." *Id.* (citation omitted). Defendants Vaughan and Bonsall had legal justification to hold Officer Ransom for observation, as evidenced by the completion of the Petition for Emergency Evaluation and by the investigation by the police and Dr. McGee. Summary judgment for the defendants on Count II is therefore appropriate.

**E.  Count III: Malicious Prosecution**

■ The elements of malicious prosecution in Maryland are: (i) a criminal proceeding instituted or continued by the defendant against the plaintiff; (ii) termination of the proceeding in favor of the accused; (iii) absence of probable cause for the proceeding; and (iv) malice or a primary purpose in instituting the proceeding other than that of bringing an offender to justice. *See Montgomery Ward v. Wilson,* 339 Md. 701, 714, 664 A.2d 916 (1995). Officer Ransom presses his malicious prosecution claim against both the County defendants and Ms. Ransom.

*1.  The County Defendants*

■ As discussed above, the Court finds that there was probable cause to prosecute Officer Ransom. Despite Officer Ransom's assertions, there is nothing inconsistent in Ms. Ransom's story to the police that would negate a finding of probable cause. Moreover, even if Ms. Ransom were unreliable, the Fourth Circuit has noted, "police must take complaining

witnesses as they find them," *Smith v. Reddy,* 101 F.3d 351, 357 (4th Cir.1996), and the police would have been remiss had they ignored her complaint. Finally, Officer Ransom has produced no evidence to indicate that Defendants Vaughan and Bonsall acted with malice.

*2.  Anna Ransom*

■ Officer Ransom has produced no evidence to demonstrate that Anna Ransom acted with malice. Ms. Ransom has stated consistently both to the police and at deposition that she reported her husband's actions so as to get him help and protect him from doing harm to himself. (*See* Anna Ransom Dep. at 109 ("I just wanted to make sure he got counseling. . . . I don't want to see him lose everything. I was looking out for him."); Bonsall Dep at 68).

There is also no evidence that Ms. Ransom pressed the prosecution of her husband. Indeed, she made it clear that she did not wish to see him prosecuted, but rather wanted him to obtain help. *See id.* Accordingly, Ms. Ransom cannot be liable for malicious prosecution. *See Brown v. Dart Drug,* 77 Md.App. 487, 492, 551 A.2d 132 (1989) ("If the defendant merely states what he believes, leaving the decision to prosecute entirely to the uncontrolled discretion of the officer . . . [the defendant] is not regarded as having instigated the proceeding.").

Finally, as discussed above, the proceedings against Officer Ransom were instituted with probable cause, and thus cannot be the basis for a claim of malicious prosecution.

**F.  Count I: Defamation**

■ Maryland law recognizes a common law privilege for a defamatory statement if "publication of the utterance advances social policies of greater importance than the vindication of a plaintiff's reputational interest." *Marchesi v. Franchino,* 283 Md. 131, 135, 387 A.2d 1129, 1131 (1978). The allegedly defamatory

statements made by Defendants Vaughan, Bonsall, and Anna Ransom all fall under the blanket of qualified privilege. Protecting the safety of Officer Ransom and Ms. Ransom, as well as investigating a crime, are all of greater importance than Officer Ransom's reputational interest.

 Qualified privilege does not apply where: (i) the publication is made with malice; (ii) the statement was not made in furtherance of the interest for which the privilege exists; (iii) the statement is made to a third person other than one whose hearing is reasonably believed to be necessary or useful to the protection of the interest; and (iv) the statement includes defamatory matter not reasonably believed to be in line with the purpose for which the privilege was granted. *See Rabinowitz v. Oates,* 955 F.Supp. 485, 488 (D.Md.1996) (citations omitted). Whether a speaker enjoys a qualified privilege for her statements is a question of law. *See id.*

All of the defendants are entitled to protection of a qualified privilege.[5] Officer Ransom has produced no evidence to suggest that (i) any the defendants' statements were made with malice; or (ii) any statements were not made in furtherance of the investigation of Ms. Ransom's complaint. The Court will therefore grant summary judgment for all defendants on Count I.

**G. Count VIII: Conspiracy**

Because the Court finds that summary judgment for the defendants appropriate on counts I–VII, there is no basis for a claim of conspiracy.

**IV. Conclusion**

For the foregoing reasons, the Court shall, by separate Order, GRANT the defendants' Motions for Summary Judgment and close the case.

---

5. Ms. Ransom argues that she is also protected by an absolute privilege. Because she is

*ORDER*

For the reasons stated in a Memorandum of even date, this Court hereby ORDERS that:

(i) the County Defendants' Motion for Summary Judgment (Docket no. 38) is GRANTED;

(ii) Defendant Anna Ransom's Motion for Summary Judgment (Docket no. 52) is GRANTED;

(ii) final judgment is ENTERED in favor of the defendants and against the plaintiff; and

(iii) the clerk is directed to CLOSE the case

---

clearly protected by qualified privilege, the Court will not address her argument.