**Ghulam Mohammed NASIM**

v.

**TANDY CORPORATION.**

**Civ. No. K–85–1072.**

United States District Court,
D. Maryland.

Sept. 14, 1989.

Joseph H. Young and Hogan & Hartson, Baltimore, Md., for plaintiff.

Barry Bach, Catherine A. Potthast and Smith, Somerville & Case, Baltimore, Md., for defendant.

FRANK A. KAUFMAN, Senior District Judge.

In this case, plaintiff, Ghulam Mohammed Nasim (Nasim), seeks compensatory and punitive damages from defendant Tandy Corporation, for the torts of false imprisonment and malicious prosecution. In a July 20, 1988 Memorandum and Order, this Court previously dismissed plaintiff's claim for false imprisonment because the statute of limitations on that cause of action had expired. Tandy has moved for summary judgment with respect to the malicious prosecution claim. That motion, for reasons stated in this opinion, will also be granted.[1]

Nasim was arrested on March 9, 1982 at a Radio Shack store in Glen Burnie, Maryland by members of the Anne Arundel County Police Department. A statement of charges was completed by Anne Arundel County Police Officer Koenig, charging Nasim with forgery and credit card offenses. Subsequently, the forgery charge was nol prossed, and the case proceeded to trial on the misdemeanor charge of receiving a stolen credit card in violation of Md. Ann.Code art. 27, § 44. At the conclusion of the state's evidence, the trial court granted Nasim's motion for judgment of acquittal, reasoning that no evidence had been presented that Nasim knew the credit card had been stolen. The testimony at trial reveals the following facts which led to Nasim's arrest.

The manager of the store, Anthony O'Hara, testified that on March 9, 1982, Nasim and a woman entered the store together, looked around for a few minutes and selected certain items for purchase. They brought all of the items up to the counter where a sales clerk prepared a receipt. The woman asked if she could pay for her purchases by check. She was told that she could, and proceeded to write a check and to produce a major credit card and a form of positive identification as requested by the cashier. Specifically, the woman produced a Master Charge credit card in the name of Helen Mullineaux, along with an age of majority card.[2] A Radio Shack employee then called Master Charge to ascertain the credit availability of the cardholder. Master Charge informed that Radio Shack employee that the latter should call the police. Accordingly, that employee retained possession of the charge card and called the police.

When the manager came back on the floor, the woman calling herself Helen Mullineaux had walked out of the front of the store. O'Hara testified that he handed the card back to Nasim, who was waiting at the counter with the merchandise, and that he (O'Hara) stated that it would be several minutes until the check would be approved. Nasim proceeded to walk around the store and wait near the counter where the merchandise was located. The Anne Arundel County police arrived and arrested Nasim.

Officer Koenig testified at trial that when he walked into the store, O'Hara

1. Diversity jurisdiction is present. While the citizenship of plaintiff herein is not established by the record in this case, the record in *Nasim v. Frank E. Basil, Inc.,* Civil No. K–87–3421 reveals Nasim is an alien. Defendant is a Delaware Corporation with its principle place of business in Texas. The damages claimed exceed the jurisdictional dollar amount.

2. An age of majority card is issued by the Motor Vehicles Administration of the State of Maryland to persons over the age of 21 who do not have driver's licenses.

identified Nasim and informed the officer that Nasim had a stolen credit card. The officer told Nasim that he had presented a stolen credit card, and began to pat him down. Nasim told the officer that he knew the woman by the name of Helen and that he had met her on "the block." The officer asked him where Helen lived but Nasim did not give the officer an address. When the officer asked Nasim where Helen had gone, "he stated that while he was waiting in the store, he had let the female have the keys to his car so she could pick up her children somewhere on Mountain Road."

Helen Mullineaux testified at trial that her pocketbook had been stolen, including her checks and credit card, and that she had reported the theft to the Anne Arundel County Police Department on February 10, 1982.

Nasim's version of the incident differs in several respects. Nasim states that he entered the store accompanied by some friends, and that he spoke to "Helen" at the sales counter because she was purchasing an item which interested him. At some point during the check approval process, the woman "asked me to look after her purchases until she returned. She explained ... that she was going out to her car to check on her children." Affidavit of Ghulam Nasim at ¶ 4. Nasim states that when O'Hara returned to the register, he asked him where the woman had gone. Nasim's friends[3] wanted to leave but O'Hara refused to allow Nasim to leave and "pushed [him] into a chair where he physically restrained [him] until the police arrived." Nasim states that he (O'Hara) called him an "Iranian bastard" and stated that "he hated Indians and Iranians." Nasim Aff. at ¶ 6.

Nasim further states that before entering the Radio Shack he did not know and had never met the woman who identified herself as "Helen." He also says that he knew nothing about the forged check or

stolen credit card she attempted to use. He states that he informed O'Hara of the above facts, but that "he made no attempt to verify them or to locate the other individuals with whom I had entered the store." Nasim Aff. at ¶ 7.

*Defendant's Motion for Summary Judgment*

The above statement of facts reveals that there are some factual disputes between plaintiff and defendant. However, Tandy asserts that it is entitled to summary judgment as a matter of law because the undisputed facts do not support a claim of malicious prosecution, even giving to plaintiff the benefit of all factual differences and references. This Court agrees.

While the tort of malicious prosecution is not favored in the law, *Exxon Corp. v. Kelly,* 281 Md. 689, 693, 381 A.2d 1146 (1978), it is recognized in Maryland in appropriate cases. *Id.* The elements of a cause of action in Maryland for malicious prosecution of a criminal charge have been articulated as follows: "(a) a criminal proceeding instituted or continued by the defendant against the plaintiff, (b) termination of the proceeding in favor of the accused, (c) absence of probable cause for the proceeding, and (d) 'malice', or a primary purpose in instituting the proceeding other than that of bringing an offender to justice." *Safeway Stores, Inc. v. Barrack,* 210 Md. 168, 173, 122 A.2d 457 (1956), *quoted with approval in Exxon Corp. v. Kelly,* 281 Md. at 693, 381 A.2d 1146. It is undisputed that the criminal proceeding terminated in favor of Nasim, *i.e.,* the trial court granted a motion for judgment of acquittal at the conclusion of the state's case, finding that the prosecution had not proved that Nasim was in "knowing" possession of a stolen credit card. Furthermore, Tandy has presented no argument that it is entitled to summary judgment with respect to the element of malice.[4]

---

**3.** The record is not clear who the alleged "friends" are.

**4.** Assuming *arguendo* the truth of Nasim's assertions regarding O'Hara's national or racial animosity, they do establish malice, the fourth re-

quirement of a malicious prosecution claim. However, Nasim must produce evidence with regard to all four elements of malicious prosecution in order successfully to oppose a motion for summary judgment, not just two of the four.

However, Tandy argues that it is entitled to summary judgment because the record independently establishes that (1) Tandy did not institute or continue the proceeding against Nasim and (2) in any event, there was probable cause for Tandy's calling the police to the Radio Shack store.

In *Anderson v. Liberty Lobby,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), the Supreme Court stated that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." The party moving for summary judgment need only show that "there is no genuine issue of material fact" and that it is entitled to a judgment as a matter of law. See also *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

### Whether Tandy Instituted or Continued the Proceeding Against Plaintiff

■ In order to succeed in an action for malicious prosecution, Nasim must show, *inter alia,* that Tandy instituted or continued the criminal proceeding against him.

"The defendant may be liable either for initiating or for continuing a criminal prosecution without probable cause. But he cannot be held responsible unless he takes some active part in instigating or encouraging the prosecution. He is not liable merely because of his approval or silent acquiescence in the acts of another, nor for appearing as a witness against the accused, even though his testimony is perjured, since the necessities of a free trial demand that witnesses are not to be deterred by fear of tort suits, and shall be immune from liability. *On the other hand, if he advises or assists another person to begin the proceedings, ratifies it when it is begun in his behalf, or takes any active part in directing or aiding the conduct of the case, he will be responsible. The question of information laid before prosecuting authorities has arisen in many cases. If the defendant merely states what he believes, leaving the decision to prosecute entirely to the uncontrolled discretion of the officer, or if the officer makes an independent investigation, or prosecutes for an offense other than the one charged by the defendant, the latter is not regarded as having instigated the proceeding;* but if it is found that his persuasion was the determining factor in inducing the officer's decision, or that he gave information which he knew to be false and so unduly influenced the authorities, he may be held liable." Prosser, *Law of Torts* pp. 836–837 (4th ed. 1971) (footnotes omitted).

*Wood v. Palmer Ford, Inc.,* 47 Md.App. 692, 700–01, 425 A.2d 671 (1981) (emphasis added). In *Palmer Ford,* Judge Orth commented with regard to the above quotation from Prosser: "This reflects the law of Maryland." *Id.*

In *Safeway Stores v. Barrack, supra,* the plaintiff was arrested and tried for the crime of theft at a Safeway store. The court stated that there were sufficient facts to warrant submitting plaintiff's malicious prosecution claim to the jury because, although defendant's employee Smith did not swear out a warrant, he was "the moving cause of his subsequent imprisonment." *Id.,* 210 Md. at 174, 122 A.2d 457. "There was evidence that Smith was employed for the very purpose of apprehending and prosecuting shoplifters," *id.,* and that he had instructions from a Safeway Retail Operations Manager "to 'use my own discretion if people acted nasty, just do what I wanted to do with them.'" *Id.* at 172, 122 A.2d 457.

In *Palmer Ford,* the appellate court, reversing the trial court, determined that summary judgment was inappropriate because the defendant had not shown an absence of any genuine issue of fact regarding the institution of criminal proceedings. In that case, it was the police rather than the defendant who swore to the charges. But the appellate court concluded that there was a "lack of definitive facts regarding the circumstances surrounding the bringing and the termination of the criminal charges against Wood." *Id.* 47 Md. App. at 697, 425 A.2d 671. Wood stated that he was charged three times for three different crimes allegedly related to the

incident and that to his knowledge, an officer of defendant made application for the "various warrants." *Id.* at 698, 425 A.2d 671. The appellate court stated that there was a disputed issue as to whether defendant "instituted ... the criminal proceeding within the contemplation of the law of malicious prosecution" because there was some evidence that the defendant had played a role in the swearing out of the warrant. *Id.* at 702, 425 A.2d 671.

In *Brown v. Dart Drug*, 77 Md.App. 487, 551 A.2d 132 (1989), the plaintiff was acquitted of charges of theft from her employer, Dart Drug, and brought suit alleging malicious prosecution. The Court of Special Appeals of Maryland concluded that defendant was not entitled to summary judgment because there was a question of fact as to whether Dart Drug instituted or continued the prosecution of plaintiff. Dart Drug had taken an active part "by examining witnesses and taking statements. The manager ... filed a Crimes Against Property report the same day that the money was discovered missing and listed Kellie Brown [plaintiff] as the number one suspect." *Id.* at 492, 551 A.2d 132. In addition, Dart Drug failed to provide all of the statements taken by it to the police and never informed the police of a statement of one witness exculpating the plaintiff. *Id.* at 493, 551 A.2d 132.

Courts in numerous jurisdictions have held that mere provision of information to the authorities does not constitute instituting or continuing a criminal proceeding. The rationale underlying such holdings is that citizens should be encouraged to assist and to participate in the enforcement of the criminal law without thereby themselves incurring civil liability. *Beard v. St. Mary's Health Center*, 735 S.W.2d 27, 30 (Mo.1987); *Ziemba v. Fo'cs'le, Inc.*, 19 Mass.App. 484, 475 N.E.2d 1223 (Ma.1985) (there was no evidence supporting the inference that defendant "demanded or directed" plaintiffs' arrest, *id.* 475 N.E.2d at

1226, that defendant furnished the police with false information, or that the police did not exercise their independent discretion in arresting plaintiffs); *Vehrs v. Piquette*, 210 Mont. 386, 684 P.2d 476, 478 (Mont.1984); *Schleicher v. Western State Bank*, 314 N.W.2d 293, 296 (N.D.1982) (plaintiff did not rebut defendant's affidavit which stated only that defendant played no part in the investigation of plaintiff; summary judgment was affirmed); *Hughes v. Van Bruggen*, 44 N.M. 534, 105 P.2d 494, 497 (N.M.1940). Furthermore, there is no requirement under Maryland law that the citizen reporting a crime to the police make an independent investigation to ascertain if there is exculpatory evidence available in favor of the accused. *See Reaves v. Westinghouse Corp.*, 683 F.Supp. 521, 524 (D.Md.1988) (Motz, J.); *see also Brewer v. Mele*, 267 Md. 437, 450, 298 A.2d 156 (1972).

In this case, Tandy's employees did nothing other than call the police after Master Charge suggested that course of conduct to Tandy, identify Nasim to the officer as the possessor of the stolen credit card, and testify at trial pursuant to a subpoena. There is no evidence that O'Hara knowingly provided any false information to Officer Koenig or that Tandy played any role in the prosecution of any crime for which Nasim was charged. On the contrary, the police conducted their own investigation, including questioning Nasim, before he was charged with any crime. Even if, as Nasim states, O'Hara physically restrained Nasim before the police arrived, that did not constitute action which after the police arrived, aided or assisted them in the *institution* of the criminal proceeding. Other than physically restraining Nasim—if O'Hara so did—O'Hara furnished only truthful information to the police, namely, that a stolen credit card had been presented by a customer who appeared to be accompanied by Nasim.[5]

---

**5.** Nasim contends that a jury could conclude that O'Hara gave false information to the police officer when he identified Nasim as accompanying the woman known as Helen who presented the check. But even if Nasim's version of the

incident is fully credited, there is no evidence in the record which would permit a jury to infer that O'Hara knowingly or unreasonably provided false information. It is undisputed that the woman and Nasim were talking at the counter

*Whether Tandy Lacked Probable Cause*

■ In order to maintain a suit for malicious prosecution, Nasim, *inter alia,* must show an absence of probable cause for the proceeding. The burden is on a plaintiff in a malicious prosecution suit to show lack of probable cause. *Derby v. Jenkins,* 32 Md.App. 386, 390, 363 A.2d 967 (1976).

Probable cause is defined under Maryland law as

> a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing that the accused is guilty.... Mere belief, however sincere, is not sufficient. There must be such grounds of belief founded upon actual knowledge of facts as would influence the mind of a reasonable person.

*Banks v. Montgomery Ward & Co.,* 212 Md. 31, 39, 128 A.2d 600 (1956) (citations omitted). If the facts relied upon or the inferences from them are "clear and undisputed," the question of probable cause is one of law for the court. *Gladding Chevrolet v. Fowler,* 264 Md. 499, 506, 287 A.2d 280 (1971), *quoting Kennedy v. Crouch,* 191 Md. 580, 590–91, 62 A.2d 582 (1948). Where the facts are contested, the absence of probable cause is a jury question. Probable cause is "measured by the circumstances as they reasonably appeared to Deputy Sheriff Mele [the defendant] at the time when he initiated action [and] is not dependent upon the actual state of the case as it may turn out upon subsequent investigation." *Brewer v. Mele,* 267 Md. at 451, 298 A.2d 156.

■ Nasim and Tandy differ as to whether, as Tandy contends, the relevant inquiry is whether *the police officer* had probable cause to arrest Nasim or whether, as Nasim puts it, *"Tandy* had probable cause to institute proceedings in the first instance." *See* Plaintiff's Opposition to Defendant's Motion for Summary Judgment at 12; emphasis added. However,

Tandy asserts that, under either version, Nasim's claim must fail.

Tandy argues that the arresting officer had probable cause to arrest and charge Nasim because the credit card presented to Radio Shack was stolen and Nasim appeared to have been associated with the woman who presented the stolen card. This Court agrees. Nevertheless, this Court concludes that plaintiff's approach is the correct one, and that the relevant inquiry is whether there was probable cause on the part of the defendant in taking initial action. *See Durante v. Braun,* 263 Md. 685, 688, 284 A.2d 241 (1971); Restatement (Second) of Torts § 662 (1977). It is the defendant who Nasim alleges instituted or continued the proceedings against the plaintiff; therefore, whether there was probable cause to support *O'Hara's* actions in this case is the key question. *See also Reaves v. Westinghouse Electric Corp.,* 683 F.Supp. at 524 (at the time criminal charges were filed against Reaves, Westinghouse (defendant) had "strong evidence" of Reaves criminal acts); *Derby v. Jenkins,* 32 Md.App. at 390, 363 A.2d 967 ("burden of proof is on the plaintiffs to show that the *defendant* instituted the criminal proceeding without probable cause" (emphasis added)).

■ Nasim argues that there are numerous factual issues which preclude a finding of the presence of probable cause in favor of Tandy. Nasim asserts that, contrary to the testimony of O'Hara and Officer Koenig, Nasim was not in possession of the stolen cards at the time of his arrest, and that even if Nasim was in possession of those items, it was only because the Radio Shack manager had handed them to him after returning to the sales floor. Nasim contends that those disputed facts "bear directly upon Mr. Nasim's involvement in the check-writing scheme and familiarity with the unknown woman" and thus bear upon the determination of whether there was probable cause. But the fact that

and appeared to be together. Nasim accepted responsibility for "looking after" her purchases. Nasim remained at the counter after "Helen"

left. It was reasonable for O'Hara to assume, even if he was mistaken, that the two were together.

O'Hara was mistaken in his belief that Nasim was with the woman is not enough to find absence of probable cause.[6] Probable cause in this case exists if the circumstances warranted a reasonable man in O'Hara's position to believe in good faith that Nasim was involved in the scheme. The circumstances in the Radio Shack store were more than sufficient to support O'Hara's belief that Nasim was so involved.

Nasim also argues that Tandy has failed to address the question of whether probable cause existed for the charge of uttering a forged instrument which was nol prossed, and that Tandy has not established as a matter of law that probable cause existed for that charge. And, Nasim contends, Tandy can not do so, because Nasim did not write or sign the check, misidentify himself, provide the stolen credit card as a form of identification or do anything else regarding the purchase.

However, there has been no evidence presented that Tandy or any of its employees played any part in the determination of what charges were to be brought against Nasim. Tandy employees merely telephoned the police on instructions from the bank. Tandy employees had probable cause, based on the information that the credit card was stolen, to believe that *some* crime had been committed by Nasim. That is all that is needed to negate the showing of lack of probable cause.

### Conclusion

Because Nasim has failed to show that there are any relevant or material issues of fact which require trial concerning two questions: (1) whether Tandy instituted or continued the proceeding against Nasim; and (2) whether Tandy lacked probable cause, Tandy's motion for summary judgment with regard to Nasim's claim of malicious prosecution will be granted. Since that is the only claim of Nasim presently outstanding in this case, judgment will be entered for defendant.

---

**6.** Many claims of malicious prosecution involve cases of mistake of fact, including mistaken identity or mistaken guilt. *See, e.g., Brewer v.* *Mele, supra; Wehrle v. Brooks,* 269 F.Supp. 785 (W.D.N.C.1966); *Safeway Stores v. Barrack, supra.*