905 A.2d 845

SMITHFIELD PACKING COMPANY, INC.

v.

Ransom EVELY et al.

No. 806, Sept. Term, 2005.

Court of Special Appeals of Maryland.

May 1, 2006.

Reconsideration Denied Sept. 22, 2006.

580

E. Duncan Getchell, Jr. (Amy M. Pocklington, Erin M. Sine, McGuire Woods LLP, on brief), Richmond, VA, Robert R. Niccolini, on brief, Baltimore, Steven B. Schwartzman, Hodes, Ulman, Pessin & Katz, PA, on brief, Towson, for appellant.

Daniel S. Kozma, Keith Watters, on brief, Washington, DC, for appellee.

Panel DAVIS, ADKINS and KRAUSER, JJ.

DAVIS, J.

Appellant/Cross–Appellee, Smithfield Packing Company, Inc., appeals from a verdict rendered by a jury in the Circuit Court for Prince George's County, on its claim of malicious

prosecution, in favor of appellee/cross-appellant, Kenneth Moore. The jury awarded Moore $560,523 in compensatory damages and $1,000,000 in punitive damages. The compensatory damage award included $52,947 in lost wages and $2,971 in interest on lost wages. The balance of the award was for non-economic compensatory damages. The court granted a remittitur reducing Moore's non-economic compensatory damages award to $304,605 and his punitive damages award to $200,000. The court granted appellant's motion for Judgment Notwithstanding the Verdict (JNOV) on the jury award of lost wages and interest on lost wages. Appellees/cross-appellants (hereinafter "Evely" and "Moore") filed a cross appeal from the trial court's order granting appellant's motion for JNOV on the jury's award of lost wages, Moore and Evely's claim for abusive discharge, and the remittitur reducing the compensatory and punitive damages award.

The appellees filed a four count complaint on June 5, 2002 against appellant alleging malicious prosecution (Count 1), defamation (Count II), abusive discharge (Count III), and intentional infliction of emotional distress (Count IV). Appellant, on July 29, 2002, filed a motion to dismiss Counts II, III, and IV; the court granted the motion as to Count II, but denied it as to counts III and IV. On March 7, 2003, appellant filed a motion for summary judgment on the three remaining counts, which was denied on April 24, 2003. The case proceeded to trial on June 23, 2003.

Following a four-day trial, on June 26, 2003, the jury returned verdicts in favor of Evely and Moore. The jury found for Evely on Counts III and IV of the complaint, awarding damages in the amount of $308,716, and for Moore on Counts I, III, and IV and awarded damages in the amount of $488,601.[1] The trial court refused to submit the issue of punitive damages to the jury because appellees were unable to prove the financial condition of appellant, pursuant to this

---

1. The docket entries reflect that the jury awarded Moore $848,141 in damages, however, a Memorandum of Court dated November 12, 2003, recognized and corrected the mathematical error.

Court's decision in *Fraidin v. Weitzman,* 93 Md.App. 168, 611 A.2d 1046 (1992). Appellees filed a post-trial motion, requesting a new trial on the issue of punitive damages, while appellant submitted a post-trial motion for JNOV as to all three counts of the complaint.

A hearing was held on the post-trial motions on April 23, 2004. The trial court granted appellant's motion for JNOV as to counts III and IV for both parties, ending the litigation with respect to Evely; however, it denied the motion on Moore's verdict for malicious prosecution. On June 8, 2004, the court issued an Order granting Moore a new trial on Count I for malicious prosecution on the underlying tort claim and the claim for punitive damages. In its order, the court states:

> The Court has reviewed the Issue of the Malicious Prosecution Count and re-reviewed the testimony concerning the March 5th encounter [2] with Moore. The Court did not comply with *Montgomery Ward v. Wilson,* 339 Md. 701, 664 A.2d 916 (1995), frankly because the Court was unaware of this requirement and neither counsel made such a suggestion. In essence, it is incumbent upon the Court in a malicious prosecution case, where the issue of probable cause or lack thereof is disputed to outline for the jury the various contentions and instruct the jury as to what constitutes and does not constitute probable cause. After trial the Court is now aware of the wisdom behind the rule. Post–Trial the Court must now attempt to piece together what the jury could have concluded from the various factual contentions. The Court frankly would be in the position of guessing and does not believe that justice would be served. Accordingly, the Court will grant a new trial to Moore with respect to the issue of Malicious Prosecution both as to the underlying tort and any damages purportedly sustained.

---

**2.** On March 5, 2002, as will be explained, *infra,* Moore attended a meeting with the Head of Corporate Security for Smithfield (Priest) and others, where he alleged he was asked, by Priest, to testify falsely against Evely.

The court granted the motion for a new trial on the issue of punitive damages because post-trial, but prior to ruling on the motions, the Court of Appeals decided *Darcars Motors of Silver Springs, Inc. v. Borzym,* 379 Md. 249, 841 A.2d 828 (2004), which the court found effectively overruled *Fraidin, supra,* and permitted the issue of punitive damages to be decided by a jury, without first being presented evidence concerning the financial condition of the defendant.

In the second trial, which was held on November 8–10, 2004, the jury found in favor of Moore. On November 29, 2004, appellant filed a motion for JNOV, which was opposed by appellee and a hearing was held on March 22, 2005. The court granted the motion for JNOV only as to Moore's award of lost wages, in the amount of $52,947 and interest in the amount of $2,971 and remitted and reduced the compensatory damage and punitive damage awards as stated, *supra.* The court reserved entering its final order to permit the parties to attempt to resolve the dispute through Alternative Dispute Resolution (ADR) and pending Moore's acceptance of the remittance. Appellee filed a motion for reconsideration of the court's June 8, 2004 grant of appellant's motion for JNOV as to the abusive discharge claims. The court denied the motion for reconsideration on May 16, 2005. Moore accepted the remittance and the court entered a final judgment in the case.

Appellant filed this timely appeal, presenting four issues for our review, which we quote:

1. Whether Moore established that Smithfield Packing instituted or continued criminal proceedings by providing false information, by giving inaccurate information, or by withholding information bearing on the decision to prosecute?

2. Whether Moore established that Smithfield Packing lacked probable cause to institute or continue criminal proceedings against Moore?

3. Whether Moore established that Smithfield Packing possessed the requisite malice in instituting criminal proceedings?

4. Whether Moore proved by clear and convincing evidence that Smithfield Packing was motivated by actual malice in instituting the criminal proceedings, so as to support punitive damages?

Appellees/cross-appellants present three questions for review.

1. Did the court err when it granted JNOV to Smithfield on the jury's award of lost wages and interest on lost wages proximately caused by Smithfield's malicious prosecution and subsequent termination of Mr. Moore's employment?

2. Did the court err when it granted a remittitur of the jury's award of noneconomic damages and a reduction of the jury's award of punitive damages without giving any reasons or rationale?

3. Did the court err when, after the first trial, it granted Smithfield's motion for JNOV on Mr. Moore's and Mr. Evely's claims of abusive discharge?

We hold that the evidence was insufficient to sustain Moore's claim for malicious prosecution because, when the evidence is viewed in a light most favorable to appellees, appellant had probable cause to believe that Moore was involved in a theft. Consequently, we reverse the judgment of the Circuit Court for Prince George's County in favor of appellee. Our decision renders appellant's third and fourth questions, as well as appellees' first and second questions, moot; therefore, those questions will not be addressed in this opinion. Appellees' third assignment of error is dismissed.

## FACTUAL BACKGROUND

In November of 2000, appellant, believing that it may be the victim of employee theft at its Landover, Maryland facility, initiated an investigation. The investigation commenced on November 6, 2000 and continued until January 12, 2001 and was conducted by appellant's Head of Security, Danny Priest. As part of the investigation, Priest employed the services of William Britt to work undercover at the Landover facility as

an employee in the shipping department. The record reveals that nine individuals were prosecuted by appellant for theft as a result of appellant's investigation, including Evely and Moore.

Moore and Evely were accused of theft as a result of an incident which occurred on December 18, 2000. Moore was employed as a truck driver by Smithfield and Evely as a shipping supervisor, at the Landover facility. On December 18, 2000, Moore arrived at the Landover facility to collect his shipment for transport to New Jersey. During a conversation with Evely, he was informed that his shipment was short two cases and he would have to attach the trailer to the truck and bring it back to the dock to have the cases loaded. Because Moore was in a hurry to go to dinner, he apparently did not want to connect the trailer and then disconnect it again before leaving for dinner, only to have to repeat the process before transporting the shipment. Evely then instructed two shipping employees, Britt and Thomas Perry (the latter having been one of the employees prosecuted for theft) to assist Moore in loading the two cases of hams into his tractor. After loading the cases in the tractor, Moore pulled away from the loading dock.

The testimony of Priest revealed that the procedure was, as the products are being loaded onto the truck, the boxes are scanned and their location on the truck is marked on the load sheet. Once a load is complete, the trailer is sealed and moved to the yard to await transport. The undercover investigator, Britt, reported the incident by calling Priest and relaying the information, which Priest wrote down and later typed into his investigation report.[3] The report stated the following:

---

3. In addition to the investigation report, which was turned over to the Prince George's County Police Department, Priest testified that there were observation notes created. The observation notes differed from the investigation report in that the notes contained information about violations of company policy as well as poor business practices.

Supervisor Ransom Everly [sic] gets (2) cases of hams and ask U.C. and Thomas Perry to take to door # 5 and give to driver. U.C. observed driver (later identified as Kenneth Moore) pull up in truck tractor # 653192 (bobtail) [4] between two trailers and take the (2) boxes and put them into the cab of his truck. The driver said to U.C. and Thomas Perry his load was (2) boxes short.

Priest also testified that he reviewed the paperwork for Moore's load and his review did not show it to be two cases short; that placing the cases in the cab of the truck was a violation of procedure for food safety; and that Britt reported that it was nighttime and Moore did not have any lights on when he positioned the bobtail between the two trucks. Priest stated that, "in view of the paper work and all these things combined, it was very suspicious activity to say the least."

Further testimony by Moore, however, revealed facts that Britt could not have known from his position as an undercover agent working on the docks. Moore testified that Evely met him at the trailer, which was parked out in the yard where all the trailers are staged when they are ready for shipping, and loaded the two cases of hams into his trailer, closed and sealed the door and the two men went their separate ways.

Evely's testimony at trial was consistent. He testified:

I had told [Mr. Jones] [5] it was two cases damaged on the load that was prestaging that load that day. And when the truck turned out, supposed [sic] to carry it to take that load out, that's when we load the truck, and I discovered it was two cases damaged. So I had to remove it from the pallet and sent [sic] it back to the packing room to get reboxed.

Evely continued stating that he instructed the "loaders" to put the boxes on Moore's truck. He further testified:

---

**4.** Bobtail refers to the tractor portion of an eighteen wheel truck that is driven while separated from the trailer.

**5.** Mr. Jones is the plant supervisor at the Landover Maryland facility.

When Ken was—I was checking in about the load number. Then I know that was his load and I told him that its still two boxes still belong to that truck. You know, I told them to get the two boxes to get on his truck. I told him to get the trailer to bring it onto the docking, the trailer staging area for quite a while. And he just told me he was going to lunch. That he didn't want to hook up twice.

\* \* \*

So I told him to throw them and carry them on the truck to put them on the trailer.

\* \* \*

Well, he said he didn't want to drop the trailer twice so I just told him to throw them in the cab of the truck.

\* \* \*

They just gave Kenny the boxes. And I walked through the warehouse, you know, where the trailer was in the trailer staging area. I popped the seal on it, he backed up to it and I put the boxes in the trailer and I just sealed the trailer and give [sic] him the paperwork and went on about my business.

Priest, during his testimony, also discussed the paperwork he reviewed, including the bill of lading, the log book at the gate (which tracks the incoming and outgoing vehicles), the loader sheet and the invoice. According to Priest, the paperwork reviewed did not support Moore's explanation that the load was two cases short and the cases had been placed in the trailer out in the yard. It was revealed on cross-examination that some of the documents contained errors. For example, the seal number, which is placed on the trailer after it is loaded—and prior to it being moved to the yard—was written on the bill of lading, but was not recorded on the loader sheet, which is completed as the truck is being loaded. Additionally, the guard log, which Priest testified did not show that Moore left the facility bobtail to get something to eat, also contained several errors in recording other incoming and outgoing vehicles.

On January 10, 2001, in conjunction with the Prince George's County Police Department, a sting operation was conducted at the Landover Maryland facility. Three of the nine employees charged with larceny were observed stealing from the facility. Neither Moore or Evely was observed. A final report, prepared by Priest, on January 25, 2001, detailing the investigation into the thefts at the Landover facility was turned over to Detective Teletchea of the Prince George's County Police Department. The report, among other things, provides that the type of case is larceny, that the status is charges pending, that the surveillance was performed by himself and Loss Prevention Specialist Chris O'Brient and that the charge against each individual is larceny. Each of the employees identified in Priest's report, except Evely and Moore, was fired on January 11, 2001, following the sting operation. Evely was suspended on January 11, 2001, following a meeting with Jones, where he explained the events of December 18, 2000, consistent with his testimony, and no action was taken with respect to Moore at that time. Evely, however, was later terminated, on February 5, 2001. Notwithstanding that Jones was in possession of Priest's January 25, 2001 report, the reason for Evely's termination was not theft, but inadequate supervision.

By February 27, 2001, charges had been filed by the Prince George's County Police Department against all nine individuals named in Priest's report. The statement of charges was filed by Detective Teletchea, without having conducted any further independent investigation into the matter. The statement of charges provided:

> [O]n or about December 18, 2000 at 5801 Columbia Pike Rd. Landover, Prince George's Coutny [sic], Maryland, the above named Defendant was employed as a truck driver for Smithfield Packing Co. The defendant Mr. Kenneth Moore took two boxes of hams valued at $249.00. The defendant took the hams from the grounds of the plant without paying for them. The theft was observed by Mr. Chris O'Briant a loss prevention officer for the company. The hams taken are the property of Smithfield Packing Co. and are the

responsibility of Mr. Danny Priest. All events occurred in Prince George's County, Maryland.

On March 5, 2001, Moore was called to Tarheel, North Carolina for a meeting with Randy Svitak, the head of the transportation department and Moore's supervisor. No one had contacted Moore between the date of the incident and the meeting. Priest was also present at the meeting and testified that he understood the purpose of the meeting was to suspend Moore based on the theft allegations. Priest also stated that he did not call the meeting, but only took Moore's statement, which was consistent with the testimony of both Moore and Evely and that he recorded the statement and provided Moore with an opportunity to correct any errors and to sign the statement.

Moore was suspended at the March 5, 2001 meeting. He testified that he was told "you probably will be placed on suspension until further investigation." When asked whether he had been informed about the charges that had been filed on February 27, 2001, Moore replied that he had not been informed and stated: "[Priest] said you are suspended until further investigation. You will probably be charged?" Moore did not receive the documents indicating he had been charged with theft until April 3, 2001. Moore also testified that, at the March 5, 2001 meeting, in exchange for not being terminated, he was asked by Priest to admit that Evely had given him the cases of hams. Specifically, Moore stated:

> When I got to the door, he said you haven't been in trouble before, have you? I said no. You never been prosecuted? I said no. He said, well, if you go ahead and admit that Ransom gave you the ham, I'll save your job. I told him that I will not lie for Smithfield.

Priest denied ever having made the offer to Moore. Moore was terminated by Smithfield on September 12, 2001, effective March 2, 2001, the date of his suspension for "violation of shop rules section 1."

Evely's case proceeded to trial and, on June 6, 2001, the District Court of Maryland for Prince George's County en-

tered a *nolle prosequi* in the case. Moore's case proceeded to trial and, on September 10, 2001, the court entered a judgement of acquittal. Additional facts will be provided.

## STANDARD OF REVIEW

Under Maryland Rule 2–519(a) "A party may move for judgment on any or all of the issues in any action at the close of the evidence offered by an opposing party, and in a jury trial at the close of all the evidence." Subsection (b) of the Rule discusses the disposition of the motion. That section provides:

> When a defendant moves for judgment at the close of the evidence offered by the plaintiff in an action tried by the court, the court may proceed, as the trier of fact, to determine the facts and to render judgment against the plaintiff or may decline to render judgment until the close of all the evidence. When a motion for judgment is made under any other circumstances, the court shall consider all evidence and inferences in the light most favorable to the party against whom the motion is made.

*See also Spengler v. Sears, Roebuck & Co.*, 163 Md.App. 220, 235, 878 A.2d 628 (2005). The motion in this case was made during a jury trial; therefore, according to the Rule, the trial court, in deciding the motion, was to consider the evidence and inferences therefrom in a light most favorable to appellee.

In reviewing a grant or a denial of a motion for judgment, we apply the same analysis as the trial court. *See University of Baltimore v. Iz*, 123 Md.App. 135, 149, 716 A.2d 1107 (1998); *Spengler*, 163 Md.App. at 235, 878 A.2d 628. "We consider all the evidence, including the inferences reasonable and logically drawn therefrom, in a light most favorable to the non-moving party." *Iz*, 123 Md.App. at 149, 716 A.2d 1107 (citing *Nationwide Mut. Fire Ins. Co. v. Tufts*, 118 Md.App. 180, 189, 702 A.2d 422 (1997)); *see also Spengler*, 163 Md.App. at 235, 878 A.2d 628 ("we 'assume the truth of all credible evidence on the issue, and all fairly deducible inferences therefrom, in light most favorable to the party against whom the motion is

made.' ") (citations omitted); *Houston v. Safeway Stores, Inc.,* 346 Md. 503, 521, 697 A.2d 851 (1997)("When reviewing a judgment n.o.v., 'this Court must resolve all conflicts in the evidence in favor of the plaintiff and must assume the truth of all evidence and inferences as may naturally and legitimately be deduced therefrom which tend to support the plaintiff's right to recover—that is, the evidence must be viewed in the light most favorable to the plaintiff.' ") (citations omitted). This standard also applies to our review of a motion for Judgment n.o.v. *Iz,* 123 Md.App. at 149, 716 A.2d 1107 (citations omitted).

■ Thus, " '[i]f there is any legally relevant and competent evidence, however slight, from which a rational mind could infer a fact in issue, then a trial court would be invading the province of the jury by declaring a directed verdict.' " *Houston,* 346 Md. at 521, 697 A.2d 851 (citing *Impala Platinum v. Impala Sales,* 283 Md. 296, 389 A.2d 887 (1978)); *see also Iz,* 123 Md.App. at 149, 716 A.2d 1107 (where the evidence is "legally sufficient to generate a jury question, we may affirm the trial court's denial of the motion."). The opposite is also true, *i.e.,* where the evidence is not sufficient to generate a jury question, or stated differently when the evidence "permits but one conclusion, the question is one of law and the motion must be granted." *Iz,* 123 Md.App. at 149, 716 A.2d 1107 citing *James v. General Motors Corp.,* 74 Md.App. 479, 484, 538 A.2d 782 (1988); *see Houston,* 346 Md. at 521, 697 A.2d 851, *Spengler,* 163 Md.App. at 235, 878 A.2d 628.

## LEGAL ANALYSIS

■ The gravamen of appellant's complaint is that the evidence was not legally sufficient to sustain appellees' claim for malicious prosecution. Appellant states that, of the four elements of the complaint, *see Exxon Corp. v. Kelly,* 281 Md. 689, 693, 381 A.2d 1146 (1978), appellee has only satisfied the fourth, *i.e.,* that he was acquitted of the charges filed against him. In order to prevail on a claim for malicious prosecution, it must be established that (a) the defendant instituted or

continued criminal proceedings against the plaintiff, (b) the defendant lacked probable cause for the proceedings, (c) there was "malice" or a primary purpose in instituting the proceedings other than that of bringing an offender to justice, (d) the proceedings ended in a favorable result for the plaintiff. *Id.* At the outset, we note that appellant makes no claim that the court improperly instructed the jury on the issues.

# I

## MALICIOUS PROSECUTION

### A. INITIATION OR CONTINUATION OF PROCEEDINGS

Appellant claims that Moore failed to prove that it initiated the criminal proceedings. Appellant argues that it merely provided complete and accurate information to the police, which does not constitute the initiation of criminal proceedings. Appellant also contends that its failure to turn over Moore's March 5, 2001 statement to the police, does not support Moore's theory that it continued the prosecution against him.

We have enunciated the basis for a finding that a defendant initiated the proceedings in the context of malicious prosecution in *Wood v. Palmer Ford, Inc.*, 47 Md.App. 692, 425 A.2d 671 (1981), *aff'd. in part and rev'd in part,* 298 Md. 484, 471 A.2d 297 (1984). Where a party instigates, aides or assist in a criminal prosecution he/she may be liable even where he/she did not swear out a warrant. *Wood,* 47 Md.App. at 701, 425 A.2d 671 (citing *Safeway Stores, Inc. v. Barrack,* 210 Md. 168, 174, 122 A.2d 457 (1956)). A person may also be liable if he/she has "instituted, instigated or inspired in any fashion a criminal proceeding against the (plaintiff) within the contemplation of the law of torts." *Id.* at 701–02, 425 A.2d 671 (citing *Brewer v. Mele,* 267 Md. 437, 298 A.2d 156 (1972)). It is also well settled that a defendant may not be held liable for malicious prosecution for relying upon the independent judgment of a prosecutor or attorney where the defendant has

made a full disclosure of all material facts relative to the charges being made. *Brown v. Dart Drug Corp.*, 77 Md.App. 487, 493, 551 A.2d 132 (1989)(citing *Gladding Chevrolet, Inc. v. Fowler*, 264 Md. 499, 287 A.2d 280 (1972)).

In *Dart Drug Corp.*, the Court considered whether summary judgment was properly granted in favor of appellee (Dart Drug) against appellant (Brown) on her claim of malicious prosecution. *Id.* at 489, 551 A.2d 132. Brown claimed that Dart Drug failed to turn over exculpatory statements to police after asking the police to initiate an investigation and furnishing the police with information tending to indicate Brown committed theft. *Id.* A theft at a Dart Drug store was investigated by two investigators from Dart Drug's internal investigations unit. *Id.* at 489–90, 551 A.2d 132. The investigators interviewed and took statements from a number of employees, then turned over the investigation to the police. *Id.* at 490, 551 A.2d 132. The investigators only turned over the statements of two of the four employee's interviewed. Later, the investigators were contacted by another employee, Forrester, who gave an exculpatory statement concerning Brown, which the investigators did not turn over to the police. *Id.*

Dart Drug contended that the police commenced the action against Brown based upon an independent investigation of the theft. *Id.* at 491, 551 A.2d 132. The police had in fact conducted an independent investigation, but did not interview Forrester because she was not made known to them. *Id.* at 490–91, 551 A.2d 132. The Court reversed the grant of summary judgment, holding:

> Dart Drug denies responsibility and avers that Detective Frohlich commenced the criminal action against Ms. Brown based on his independent investigation.

In *Wood v. Palmer Ford*, 47 Md.App. 692, 700–01, 425 A.2d 671 (1981), *aff'd. in part and rev'd. in part*, 298 Md. 484, 471 A.2d 297 (1984), Judge Orth cited Prosser, *Law of Torts* (4th ed.1971) p. 836–7, for the proposition that:

The defendant may be liable either for initiating or for continuing a criminal prosecution without probable cause. But he cannot be held responsible unless he takes some active part in instigating or encouraging the prosecution. He is not liable merely because of his approval or silent acquiescence in the acts of another, nor for appearing as a witness against the accused, even though his testimony is perjured, since the necessities of a free trial demand that witnesses are not to be deterred by fear of tort suits, and shall be immune from liability.  On the other hand, if he advises or assists another person to begin the proceedings, ratified it when it is begun in his behalf, or takes any active part in directing or aiding the conduct of the case, he will be responsible.  The question of information laid before prosecuting authorities has arisen in many cases.  *If the defendant merely states what he believes, leaving the decision to prosecute entirely to the uncontrolled discretion of the officer, or if the officer makes an independent investigation, or prosecutes for an offense other than the one charged by the defendant, the latter is not regarded as having instigated the proceeding;  but if it is found that his persuasion was the determining factor in inducing the officer's decision, or that he gave information which he knew to be false and so unduly influenced the authorities, he may be held liable.* (footnotes omitted).

In the case at bar, Dart Drug directly aided the conduct of the police investigation by examining witnesses and taking statements.  The manager, Stanley Klutz, filed a Crimes Against Property report the same day that the money was discovered missing and listed Kellie Brown as the number one suspect.  Of the five statements that were taken by Dart Drug investigators, only two were furnished to Detective Frohlich.  Most importantly, neither the exculpatory statement executed by Ms. Forrester nor Ms. Forrester's identity was ever made known to the police.

It is settled law that a civil defendant may not avoid liability for malicious prosecution by relying on the independent judgment of a prosecutor or attorney unless that defendant

has made a full disclosure of all material facts relative to the charges being made. *Gladding Chevrolet, Inc. v. Fowler,* 264 Md. 499, 287 A.2d 280 (1972); *Mertens v. Mueller,* 122 Md. 313, 89 A. 613 (1914). It has been repeatedly held that the summary judgment procedure is not a substitute for trial but a hearing to determine whether a trial is necessary, when there is no genuine controversy. *Brewer v. Mele,* 267 Md. 437, 298 A.2d 156 (1972). The critical question for the trial court on the motion for summary judgment is whether there exists a genuine dispute as to a material fact and, if not, what the ruling of law should be upon those undisputed facts. In determining whether a factual dispute exists, all inferences which may be drawn from the pleadings, from affidavits, or from admissions must be resolved against the moving party. Indeed, if the facts are susceptible of more than one inference, the materiality of that arguable factual dispute must be judged by looking at the inferences in a light most favorable to the person against whom the motion is made and in a light least favorable to the movant. *Liscombe v. Potomac Edison Co.,* 303 Md. 619, 495 A.2d 838 (1985). We believe it clear that ***once Dart Drug had failed, for whatever reason, to provide the police with the exculpatory evidence regarding Ms. Brown,*** the issue of whether Dart Drug was liable on the theory of either malicious prosecution or negligence became a question for the fact finder. Accordingly, we hold that the trial court erred in granting the motion for summary judgment on behalf of Dart Drug.

*Id.* at 491–493, 551 A.2d 132.

In *Nasim v. Tandy Corp.,* 726 F.Supp. 1021 (1989), the United States District Court for the District of Maryland considered the defendant's motion for summary judgment in a malicious prosecution case, in which the defendant claimed it did not institute or continue criminal proceedings against Nasim and there was probable cause to call the police to the Radio Shack store. *Id.* at 1023–24. Nasim had entered the Radio Shack store with a woman who attempted to use a stolen credit card and checks to make purchases. *Id.* at 1022.

When the employee called to check the balance on the credit card, he was told by Master Card that the card was stolen and to call the police. *Id.* At some point, the woman left the store and Nasim remained. *Id.* The police were called and Nasim was arrested and charged with forgery and credit card offenses. *Id.* The charging documents were filled out by the police. *Id.* In granting the motion for summary judgment, the court found that Tandy employees did nothing more than call the police as Master Card suggested, identify Nasim as the holder of the stolen card, and testify at trial. *Id.* at 1025. The court also concluded that the police conducted their own independent investigation and that Tandy employees only provided truthful information to the police. *Id.*

■ In the case at hand, on January 10, 2001, in cooperation with appellant, the police conducted a sting operation at the Smithfield plant. During the sting operation, three employees were observed stealing, but Moore was not among the three. It is uncontested that the sting operation was the extent of the police investigation into this matter. Any information the police had implicating Moore could have only been obtained from Priest's investigation report, which he turned over on January 25, 2001. The charges that the police lodged against Moore were drafted solely from information contained in the report. Thus, the narrow issue to be resolved is whether the police were persuaded or influenced to bring the charges against Moore, or whether the decision to charge Moore was solely within the discretion of the police.

The testimony at trial was that Priest had no contact with the police between January 25, 2001, when the investigation report was submitted, and February 27, 2001, the date the charges were filed against Moore. Priest testified that it was his intention to bring charges against the nine people listed in his report, although only three of the nine had been observed during the sting. When asked, "Did you tell him (Detective Teletchea) that you wanted him to bring charges against theses nine people," Priest responded "yes, sir." Priest further testified, however, that it was his intention to turn over

the information he had gathered to the police and allow them to conduct an investigation into the matter. No other evidence tending to show that appellant influenced the police decision to prosecute was adduced. This evidence is insufficient to demonstrate that appellant influenced or persuaded the police to file charges against Moore.

■ There is no evidence to support a determination that the filing of charges was initiated or instigated by Priest. There was also no evidence presented to show that Priest or appellant aided the criminal prosecution of Moore. The uncontroverted evidence presented at trial was that Priest simply turned over his report to the police. Merely providing information to the police, as appellant claims it did, and leaving the decision to bring charges to the sole discretion of the police, cannot constitute the initiation of criminal proceedings. *See Dart Drug Corp., supra.*

The failure of the police to further investigate the allegations against Moore cannot be attributed to any actions on the part of appellant. Appellant's actions on the day after the sting operation, on January 10, 2001, in our view, deprived the police of any opportunity to conduct a further investigation into the theft. Each of the employees named in the report, except Moore, was fired or suspended on the day following the sting operation, rendering it nearly impossible for the police to gather additional evidence against the individuals. Once the employees at the plant were on notice that appellant was investigating acts of theft and other violations of company policy, which could affect even those employees not implicated, any further police investigation would likely have been to no avail. Notwithstanding appellant's actions, it was within the province of the police to further investigate the matter had they chosen to do so.

■ Appellee alleges, as further support for the proposition that appellant initiated the proceedings, that Priest provided false, inaccurate, misleading or incomplete information to the police, based upon the charging documents filed by the police, after receiving Priest's report. Merely providing false infor-

mation, however, is not enough. That information must have also unduly influenced the authorities to commence or continue the proceedings. *See Wood*, 47 Md.App. at 701, 425 A.2d 671. Appellees claim that the charging document contained two false statements. The first statement is "The defendant took the hams from the ground of the plant without paying for them."

A reading of the full text of the report prepared by Priest reveals that many of the events listed contain statements similar to the one, *supra*, but the event report concerning Moore does not. The event report for December 18, 2000, as appellee states, does not contain the statement that anyone witnessed Moore take the two cases of hams from the plant. The fact that Detective Teletchea, in preparing the charging statement, took liberties in recounting Priest's report does not give rise to the inference that Priest provided a false statement. The information provided by appellant—that Britt witnessed and helped appellee, along with another worker, in loading two cases of hams into the cab of his truck—was not false or misleading. The conclusions reached by Priest with respect to those events, however, could be viewed as false. The report makes it appear that Moore had committed larceny when there was no evidence that Moore had committed a crime.

The second example that appellee identifies states: "The theft was observed by Mr. Chris O'Briant a loss prevention officer for the company." The events of December 18, 2000 were not actually witnessed by O'Briant, but rather were witnessed by Britt. A complete reading of the report shows that O'Briant was present on two occasions to witness incidences of theft, on December 7, 2000 and January 10, 2001. No inference may be drawn that the errors in the charging documents are the result of false statements provided by Priest. Notwithstanding, the information contained in the charging documents is attributable to the report prepared by Priest. There is simply no way to attribute Detective Teletchea's embellishment of the information from the report, in drafting the charging document to Priest.

■ Consequently, under the standard articulated in *Dart Drug Corp.*, there is insufficient evidence to support a conclusion that appellant initiated the criminal proceedings against Moore. There was no evidence to support a conclusion that Priest influenced the police to file charges against Moore by simply turning over to them the report which described what the undercover worker observed on December 18, 2000. Additionally, the information in the report concerning Moore was not false. The testimony supported the account of the events witnessed and described by Britt. Unlike *Dart Drug Corp.*, appellant did not aide in or direct the investigation patently because the police, themselves, never engaged in an investigation at all. Appellant did not file the charging documents against Moore as did the manager in *Dart Drug Corp.* Even though a party can be liable for malicious prosecution when that party did not personally file the charges, the filing of charges is evidence that the party initiated the prosecution.

■ Appellant, however, could have been liable for continuing a prosecution, even where it was not responsible for actually initiating the proceedings. Appellee contends that, by not turning over an exculpatory statement to the police obtained during a March 5, 2001 meeting in Tarheel, North Carolina, appellant continued the prosecution against Moore. Appellant posits that the statement was inculpatory rather than exculpatory and that appellee failed to prove that the information would have influenced the authorities' decision to prosecute. *See Dart Drug, supra.* Appellant states that Priest investigated the information provided by Moore and found objective evidence that contradicted his statement. If Moore's statement constituted exculpatory evidence and appellant failed to reveal it to the police, once it was obtained by them, whether it would have influenced the decision to prosecute became a factual question for the jury. *See Dart Drug Corp., supra* ("We believe it clear that **once Dart Drug had failed, for whatever reason, to provide the police with the exculpatory evidence regarding Ms. Brown,** the issue of whether Dart Drug was liable on the theory of either mali-

cious prosecution or negligence became a question for the fact finder.").

Exculpatory evidence is "evidence favorable to an accused." *Grandison v. State,* 390 Md. 412, 431, 889 A.2d 366 (2005). The statement made by Moore on March 25, 2001, contained more information than the brief statement included in Priest's report, detailing that Moore's load was two cases short. In large part, the statement provides a reasonable explanation—which none of the evidence obtained by Priest during his further investigation necessarily rebutted—that the cases of hams were only briefly placed in his cab to be transported to the trailer so that he could avoid having to connect and disconnect the trailer more than once. Specifically, the statement taken by Priest at the meeting provides:

I met Ransom the shipping supervisor going into the building. I asked him about the load I was picking up. He said yeah I've got it right here, holding it in his hand the paper work. He stated he had to add up the boxes again because he thought he was short 2 cases. He came up to me later and said he was (2) cases short and said to back the trailor [sic] to the door. I said I wanted to go to get something to eat and we could take care of it when I came back. He said he wouldn't be there. He said just pull up the tractor to the door and we'll throw the boxes on the truck and well [sic] take them around and put them on the trailor [sic]. The tall white guy handed them to me and I put them in the tractor on the front seat. Me and Ransom drove around to the trailor [sic] and put them on the trailor [sic]. Ransom broke the seal on the trailor [sic] and I passed them to him and he put them on the trailor [sic]. He placed them on the short pallet. He put them on the floor then climbed up into the trailor [sic] putting them on the short pallet. Ransom then closed the door placing a new seal on the trailor [sic]. I signed all the paperwork. Then I left immediately to go eat, bobtail. I returned and picked up the trailor [sic] and left.

The statement was taken more than a month after appellant's investigation had concluded and only days following the

filing of charges against Moore. It is unquestionable that Moore's statement provides information that was not disclosed prior to the filing of charges against Moore and that may have influenced the police and the prosecutor to conduct further investigation before deciding whether to proceed or to dismiss the charges. As stated, *supra*, Priest attempted to confirm Moore's account by further investigation. The gate log, at trial, however, was shown to be inaccurate on the date of the alleged theft. The fact that the shipping paperwork, reviewed by Priest, showed that the correct number of cases were loaded and delivered does not undercut Moore's account of what occurred.

Moreover, while we have determined that the charges filed against Moore were initiated as a result of the independent discretion of the police and prosecutors, appellant cannot rely on that independent discretion to shield itself where it has failed to make a "full disclosure of all material facts relative to the charges being made." *Dart Drug Corp., supra*, (citing *Gladding Chevrolet, Inc. v. Fowler*, 264 Md. 499, 287 A.2d 280 (1972)). Moore was unaware that charges had been filed against him at the time of the meeting on March 5, 2001, because he did not actually receive those documents until April 3, 2001. Priest was aware that charges had been filed, however, because he received a telephone call from Detective Teletchea advising him of that information. The purpose of the meeting, as explained by Priest, was to suspend Moore; however, Priest and Svitak took a statement from Moore before suspending him. Given that Priest claimed he did not have any contact with Moore prior to that meeting, he could not have known the information Moore provided at the meeting, *i.e.*, that he and Evely loaded the cases into his trailer shortly after they were loaded into his bobtail tractor. These facts are material to the charges of larceny, insofar as they raise the question of whether the cases were driven off the property as part of the load or in the cab area of Moore's truck.

Finally, Moore testified that, following the meeting, Priest offered that, in exchange for his testimony against Evely, he

would not be terminated. Priest testified that he never made such an offer to Moore, but it is the prerogative of the jury to choose whom to believe. The failure to turn over exculpatory evidence is sufficient evidence alone to support the conclusion that appellant continued the prosecution of Moore. When that failure is viewed in conjunction with the testimony that Moore refused the offer to testify against Evely, the evidence is more than sufficient to support a jury's determination that appellant continued the prosecution against Moore.

## B. PROBABLE CAUSE

Appellant claims that the trial court erred in not deciding as a matter of law that Priest had probable cause to report Moore's behavior on December 18, 2000 to the police. Appellant's contention is that the operative facts were not disputed. The facts relied upon by appellant included:

1. The Smithfield Packing facility was experiencing serious problems with theft.

2. Britt had observed dockworkers and security guards stealing hams, on the night shift, and placing them in their private vehicles.

3. Thomas Perry was frequently observed stealing ham.

4. On the evening of December 18, 2000, Britt observed Moore drive the bobtail up with his lights off, and Perry give him two cases of ham that Moore placed in the cab of the truck.

Appellant characterizes the incident as no different from the other incidences contained in Priest's report and observed by Britt. Appellant also states that it investigated Moore's explanation that the load was two cases short and that it found no evidence to alter its conclusion that Moore stole the hams.

Probable cause has been defined as " 'a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing that the accused is guilty.' " *Gladding Chevrolet, Inc. v. Fowler*, 264 Md. 499, 505–06, 287 A.2d 280 (1972) citing *Banks v.*

*Montgomery Ward & Co.*, 212 Md. 31, 39, 128 A.2d 600 (1957)(internal citations omitted). " 'Mere belief, however sincere, is not sufficient. There must be such grounds of belief founded upon actual knowledge of facts as would influence the mind of a reasonable person.' " *Id.* at 506, 287 A.2d 280. "What facts are sufficient to show want of probable cause in any case is, of course, a question of law for the court; but whether such facts are proved by the evidence is a question for the jury." *Id.* (citing *Cooper v. Utterbach*, 37 Md. 282, 317 (1873)).

In *Okwa v. Harper*, 360 Md. 161, 757 A.2d 118 (2000), the Court of Appeals, in discussing the concept of probable cause, stated:

> Probable cause, as the term suggests, is a concept based on probability. *See State v. Ward*, 350 Md. 372, 396, 712 A.2d 534, 545–46 (1998) (quoting *Illinois v. Gates*, 462 U.S. 213, 231, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527, 544 (1983)). It does not have a technical definition. Rather, the question of whether a law enforcement officer had probable cause to make a particular arrest is determined on "factual and practical consideration of everyday life on which reasonable and prudent [people] ... act." *Id.* We have defined probable cause as " 'facts and circumstances sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense.' " *DiPino [v. Davis]*, 354 Md. [18], 32, 729 A.2d [354,] 361 [ (1999) ] (citations omitted) (alterations in original).

*Id.* at 183–84, 757 A.2d 118. In *Exxon Corp., supra,* the Court said:

> It is equally clear that if the facts, and the inferences to be drawn therefrom, relied on to constitute probable cause are clear and undisputed, the question is one of law for the court; where the facts are contested, however, whether they are proved is a question for the jury.... Thus when contested facts generate a jury issue, "the jury, after being

instructed as to what constitutes 'probable cause,' ... should be left to determine its presence or absence."

281 Md. at 697–98, 381 A.2d 1146.

The burden is upon the plaintiff in a malicious prosecution case to show that the defendant lacked probable cause. *Nasim v. Tandy Corp.*, 726 F.Supp. 1021, 1026 (1989). We look at the evidence supporting probable cause as it existed at the time of the initiation of the action. *See id.* ("Probable cause is 'measured by the circumstances as they reasonably appeared to [ ] [the defendant] at the time when he initiated action [and] is not dependent upon the actual state of the case as it may turn out upon subsequent investigation.' *Brewer v. Mele*, 267 Md. at 451, 298 A.2d 156"); *Carter v. Aramark Sports and Entertainment Serv., Inc.*, 153 Md.App. 210, 227, 835 A.2d 262 (2003).

In providing the jury with the framework for evaluating appellant's evidence in support of the existence, *vel non*, of probable cause, the judge instructed the jury as follows:

Smithfield Packing acted without probable cause if it did not have reasonable grounds to believe in Mr. Moore's guilt. Mere belief, however sincere, is not sufficient. There must be such grounds for belief founded upon the actual knowledge of acts as would influence the mind of a reasonable person. To constitute probable cause for the prosecution of a criminal action against Mr. Moore in this case, the evidence must establish that; one, as to the events of December 18, 2000, Mr. Priest had a reasonable ground of suspicion that Mr. Evely was transferring two boxes of ham to Mr. Moore for Mr. Moore to steal them. Two, that it would appear to an ordinary and cautious person that Mr. Moore was stealing the two boxes of ham. If you find that the foregoing facts are true, you must find that there was probable cause for the prosecution of the criminal action against Mr. Moore. If you find such facts are not true, then you must find no probable cause for the prosecution of the criminal actions against Mr. Moore.

Appellant did not object to any of the jury instructions in this case. The facts contained in the **report are insufficient** to support a jury's finding that appellant lacked probable cause, *i.e.,* that there were not such grounds for belief that would influence the mind of a reasonable person that Moore was stealing.

At the time the charges were filed against Moore or, more appropriately, at the time when the report was turned over to the police, the appellant's knowledge concerning the events of December 18, 2000 was limited to the information relayed by Britt. Both Evely and Perry had been previously identified as potential suspects involved in thefts at the plant. The cases were loaded into the bobtail tractor rather than the trailer, and Moore stated his load was two cases short. The facts, as they were described by Britt and included in Priest's report, were uncontested and should have been decided as a question of law. The jury was not entitled to consider the further explanation contained in Moore's statement. Moore's statement that his load was two cases short does not detract from the reasonableness of appellant's suspicion that the cases were being stolen. The court **should not have submitted the issue to the jury because it should have decided the issue as a question of law. In any event, there was insufficient evidence** to support the conclusion that appellant lacked probable cause to initiate the proceeding. In light of our disposition of this issue, the judgment in favor of appellee on his claim for malicious prosecution must be reversed. The presence of probable cause is a bar to the malicious prosecution claim. *See Carter,* 153 Md.App. at 233, 835 A.2d 262.

Because we have reversed the claim for malicious prosecution, the remaining issues presented on appeal by appellant are rendered moot. The first two issues submitted by appellees on cross-appeal are also moot and will not be addressed as they relate to the claim for malicious prosecution.

## II. PROCEDURAL DEFECT

Appellant's final issue, relating to the first trial, is dismissed. We explain.

Appellant claims that the third assignment of error arises from the first trial and that it did not claim any error with respect to those proceedings; therefore, appellees are not entitled to rely upon the statement of the case, or the statement of facts submitted in its initial brief. Appellees assert that, even if they are in violation of the Maryland Rules with respect to the issue of abusive discharge, the violation is "not substantial" because the issue is not intensely factual but rather a question of law.

Appellant's assertions are alleged violations of Maryland Rule 8–504. Subsection (a) of the Rule provides: "A brief shall comply with the requirements of Rule 8–112 and include the following items in the order listed." Subsection (a)(4) states that the brief shall contain "A clear concise statement of the facts material to a determination of the questions presented, except that the appellees' brief shall contain a statement of only those additional facts necessary to correct or amplify the statement in the appellant's brief. Reference shall be made to the pages of the record extract supporting the assertions . . . ." Finally, subsection (c) provides the consequences of noncompliance with the Rule. That section states, "For noncompliance with this Rule, the appellate court may dismiss the appeal or make any other appropriate order with respect to the case, including an order that an improperly prepared brief be reproduced at the expense of the attorney for the party for whom the brief was filed."

With respect to the third issue raised, appellees concede that they did not set out a statement of facts as the Rule requires. Specifically, appellees state, in their brief, at footnote 6, "Mr. Moore and Mr. Evely will not set forth a separate statement of facts for the first trial. The evidence introduced at the first trial is essentially the same as that admitted at the second trial, although there was some additional evidence with respect to Mr. Evely's claims." While the Rule provides that we may dismiss for failure to comply with the dictates of the Rule, it is a matter left to our discretion. *See Esteps Electrical & Petroleum Co. v. Sager,* 67 Md.App. 649, 657, 508 A.2d 1032 (1986).

■ Appellees' failure to provide a statement of the facts and a statement of the case, with respect to their claim that the trial court erred in dismissing their claim of abusive discharge, is fatal to their request that we review that ruling on appeal. The issues raised by that claim are unique to the first trial where the issues were decided. Appellees have not outlined the evidence presented at that trial to support their claim for abusive discharge. Appellees' argument that the evidence at the second trial is virtually identical to that presented at the first trial is unpersuasive. Appellees have not, at the very least, directed us to the testimony in the transcript of the first trial which they believe supports their claim. Additionally, with full knowledge that appellant had raised the issue, appellees submitted a reply brief in this case, but failed to include even a brief statement of the facts, procedural history or provide appendix references. We, therefore, decline to address appellees' challenge to the trial court's dismissal of their abusive discharge claims.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGES'S COUNTY IS REVERSED.**

**COSTS TO BE PAID BY APPELLEE.**